UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

SHAMARA T. KING, on
behalf of herself and all others similarly
situated,

               Plaintiff,

        v.

GENERAL INFORMATION SERVICES,
INC.,

            Defendant.

Case No.:  2:10-cv-06850-PBT

## MOTION FOR JUDGMENT ON THE PLEADINGS
## AND SUPPORTING MEMORANDUM OF LAW

Defendant General Information Services, Inc. ("GIS") respectfully submits this motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## INTRODUCTION

On June 23, 2011, the Supreme Court decided *Sorrell v. IMS Health Inc*., 131 S. Ct. 2653 (2011), a landmark First Amendment decision that redefined the constitutional protection for disclosure of truthful commercial information.  In *Sorrell*, the State of Vermont enacted a statute prohibiting pharmacies and data brokers from selling doctors' prescription information to drug companies, and prohibited drug companies from using that information to market their drugs.  The Supreme Court invalidated the statute on First Amendment grounds, holding that its content-based, speaker-based restrictions on truthful commercial speech did not survive "heightened" constitutional scrutiny.

As many First Amendment commentators have indicated, *Sorrell* marks a substantial shift in the protection afforded to commercial speech.  Under *Sorrell*, many existing laws

limiting disclosure of truthful commercial information are now unconstitutional. This case concerns one of those statutes. Plaintiff's central claim in this lawsuit is based on 15 U.S.C. § 1681c, a provision of the Fair Credit Reporting Act that prohibits consumer reporting agencies from disclosing public information about an individual's criminal record (other than a criminal conviction) if the information is more than seven years old.

Under *Sorrell*, this statute is a content- and speaker-based restriction on speech. Moreover, like the statute in *Sorrell*, § 1681c is wildly underinclusive and fails to "fit" the government's purported interests in relevance, accuracy, and privacy. For example, the statute does not prohibit employers from *considering* criminal records that are more than seven years old—it merely precludes a single group of speakers from *disclosing* that information to them. Likewise, § 1681c targets only a single disfavored group of speakers (consumer reporting agencies) but does not restrict others who make that same information available to employers. Finally, the statute creates arbitrary exemptions—for example permitting disclosure of criminal records older than seven years for jobs paying more than $75,000. These exemptions further undercut any claim that the ban on disclosure for lesser sums furthers a substantial government interest.

In sum, *Sorrell* marks a dramatic shift in the protection afforded to content- and speaker-based restrictions on truthful commercial information. As the dissent in *Sorrell* noted, its holding has sweeping effects on many other laws restricting disclosure of commercial information, including FCRA. Because a prohibition on disclosure of truthful information regarding an individual's criminal record falls squarely within *Sorrell*'s holding, § 1681c is unconstitutional. Accordingly, the Court should enter judgment on the pleadings in favor of GIS on Plaintiff's § 1681c claim.

- 2 -

## FACTUAL BACKGROUND

The following facts are taken from the allegations in the complaint.  Those allegations must be taken as true in this motion for judgment on the pleadings.  *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000).

In February 2000, Plaintiff Shamara King was "arrested and charged with eleven counts of motor vehicle theft."  (Doc. 14, Amend. Compl. ¶¶ 22, 24.)  King ultimately pleaded guilty to criminal conspiracy to engage in automobile theft.  (*Id*. ¶ 25.)  The prosecutor then "nolle prossed" the remaining ten charges, a Maryland practice equivalent to dismissing the charges.  (*Id*. ¶ 26.)

In 2010, King applied for a job at the U.S. Postal Service.  (*Id*. ¶ 27.)  As part of the application process, the Postal Service obtained a consumer report from GIS.  (*Id*. ¶ 28.)  The report disclosed both King's conviction for conspiracy to engage in auto theft, and the ten other offenses charged in the same prosecution.  (*Id*. ¶ 30.)  The report accurately disclosed that those ten other charges were dismissed.  (*Id*.)  However, because those criminal charges were more than seven years old, King alleges that § 1681c prohibited GIS from disclosing them to the Postal Service in a consumer report.  *See* 15 U.S.C. § 1681c.  King brought this action alleging willful violations of FCRA, including violations of § 1681c.  (*Id*. ¶ 47.)

## ARGUMENT

Section 1681c prohibits consumer reporting agencies from disclosing "records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period."  15 U.S.C. § 1681c(a)(2).  It also prohibits disclosure of "[a]ny other adverse item of information, other

US2008 2836363.8

than records of convictions of crimes which antedates the report by more than seven years."

15 U.S.C. § 1681c(a)(5).  Thus, § 1681c prohibits consumer reporting agencies from

disclosing *any* public information regarding an individual's criminal record that is more than

seven years old, except for the record of an actual criminal conviction.  This motion refers

collectively to the information prohibited by §§ 1681c(a)(2) and 1681c(a)(5) as "old criminal

records."

These statutory provisions prohibit particular speakers from disclosing truthful

information that is a matter of public record.  The Supreme Court's recent decision in *Sorrell*

squarely controls this case.  Under *Sorrell*, § 1681c is an unconstitutional content- and

speaker-based prohibition on the disclosure of truthful information.  Accordingly, the Court

should enter judgment on the pleadings on Plaintiff's § 1681c claim because Plaintiff cannot

maintain a statutory cause of action for violation of an unconstitutional statute.

## I.       Background and Holding in *Sorrell*

Because this motion relies primarily on *Sorrell*, it is helpful to first outline the

Supreme Court's reasoning and holding in that landmark decision.  In *Sorrell*, Vermont

enacted a law targeting drug companies who obtain data about doctors' prescription practices

and then target those doctors with marketing designed to persuade them to purchase specific

brand-named drugs.  *Sorrell*, 131 S. Ct. at 2659-60.  This targeted drug marketing is known

as "detailing."  *Id*. at 2659.

Drug companies obtain the prescriber data from data brokers, who in turn obtain it

from pharmacies that maintain records of patients' prescriptions and the doctors who

prescribed those drugs.  *Id*. at 2660.  The Vermont statute prohibited pharmacies and data

brokers from selling prescriber data if the data would be used for marketing, and prohibited

drug companies from using prescriber data to market their drugs.  *Id.* at 2660-61.  Drug companies and data brokers affected by the statute challenged it on First Amendment grounds.

The Supreme Court held that Vermont's restrictions on the sale and use of prescriber data violated the First Amendment.  The Court first explained that prescriber data is "speech" under the First Amendment.  "[T]he creation and dissemination of information are speech within the meaning of the First Amendment. . . . Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs."  *Id.* at 2667.  "If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct."  *Id.*

The Court next discussed the nature of the restriction Vermont placed on that protected speech.  The Court explained that the statute "enacts content- and speaker-based restrictions on the sale, disclosure, and use of prescriber-identifying information."  *Id.* at 2663.  Specifically, the statute permitted pharmacies and data brokers to sell prescriber data to insurance companies, university researchers, journalists, and anyone else except those using it for marketing purposes.  "The statute thus disfavors marketing, that is, speech with a particular content."  *Id.*  "More than that, the statute disfavors specific speakers, namely pharmaceutical manufacturers."  *Id.*  The end result of these restrictions was to preclude "detailers—and only detailers—from communicating with physicians in an effective and informative manner."  *Id.*  Therefore, the Court held that the Vermont statute "imposes a speaker- and content-based burden on protected expression, and that circumstance is sufficient to justify application of heightened scrutiny."  *Id.* at 2667.

- 5 -

The Court then applied that "heightened scrutiny." *Id.* at 2664.  In doing so, the Court explained that there was no need to determine whether the prescriber data was ordinary speech or commercial speech.  Commercial speech, in contrast to ordinary protected speech, is "speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001).  The test for laws burdening commercial speech generally is less strict than the test for laws burdening core protected speech. *See Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.*, 447 U. S. 557, 566 (1980).  However, in *Sorrell*, the Court explained that "[a]s in previous cases" involving content-based and speaker-based restrictions, "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied."  131 S. Ct. at 2667.

Under a commercial speech inquiry, "it is the State's burden to justify its content-based law as consistent with the First Amendment."  To satisfy that burden, "the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Id.* at 2667-68.  "There must be a fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* at 2668 (internal quotation marks omitted).

In *Sorrell*, Vermont asserted two categories of governmental interests.  The Court rejected both of those arguments because the "fit" between the government interest and the means used to accomplish it was insufficient. *Id.*

First, Vermont argued that the statute was necessary "to protect medical privacy, including physician confidentiality, avoidance of harassment, and the integrity of the doctor-patient relationship." *Id.* at 2668.  But the Court held that the statute was not drawn to serve

- 6 -

this interest because "pharmacies may share prescriber-identifying information with anyone for any reason save one: They must not allow the information to be used for marketing." *Id*. For example, sharing prescriber data with insurance companies, university researchers, or journalists raised the identical concerns, yet the statute did not prohibit pharmacies from selling the data to those groups and did not regulate how those groups could use the data. "The explicit structure of the statute allows the information to be studied and used by all but a narrow class of disfavored speakers. Given the information's widespread availability and many permissible uses, the State's asserted interest in physician confidentiality does not justify the burden that [the statute] places on protected expression." *Id*.

Second, Vermont argued that, by using prescriber-identifying information, drug marketers can more effectively market their brand-name drugs (as opposed to less-expensive alternatives), thereby increasing the costs of healthcare. The Court rejected this argument because "[w]hile Vermont's stated policy goals may be proper, [the statute] does not advance them in a permissible way." *Id*. at 2670. "The State seeks to achieve its policy objectives through the indirect means of restraining certain speech by certain speakers—that is, by diminishing detailers' ability to influence prescription decisions." *Id*. The Court held that this approach did not "fit" the government's purported interests because the "fear that people would make bad decisions if given truthful information cannot justify content-based burdens on speech." *Id*. "The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." *Id*. at 2671. "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the

- 7 -

audience, not the government, assess the value of the information presented." *Id.* at 2671-72. Accordingly, the Court held that Vermont's restrictions on the use of prescriber data violated the First Amendment.

## II.     Under *Sorrell*, § 1681c violates the First Amendment.

Section 1681c is unconstitutional under *Sorrell*. That decision marked a major shift in First Amendment jurisprudence by greatly expanding the protection for disclosure of truthful commercial information. Moreover, the *Sorrell* decision itself forecasts the demise of FCRA's content- and speaker-based restrictions on the disclosure of truthful information. For example, during its discussion of why prescriber data is "speech" under the First Amendment, the Court quoted its earlier plurality decision in *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985), for the proposition that a "credit report," like prescriber data, is "speech" under the First Amendment. Moreover, Justice Breyer, dissenting in *Sorrell*, pointed to a separate FCRA provision limiting the use of consumer reports for marketing purposes as an example of a "roughly comparable" situation and the "danger of applying" heightened scrutiny to content- and speaker-based restrictions on commercial speech. *Sorrell*, 131 S. Ct. at 2676. In short, the Supreme Court understood its decision in *Sorrell* would have sweeping consequences on similar laws such as § 1681c.[1]

---

[1] Although no court has previously addressed the constitutionality of § 1681c, in *Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001), the D.C. Circuit rejected a First Amendment challenge to a separate provision of FCRA. That provision precluded consumer reporting agencies from selling to marketers the lists of names and addresses of individuals meeting certain criteria, such as having an automobile loan or a department store credit card. *Id*. at 812. The Supreme Court denied certiorari in *Trans Union*. However, Justice Kennedy, the author of *Sorrell*, dissented from that denial, explaining that disclosing customer lists to marketers was protected speech and that the D.C. Circuit's opinion has improperly "denigrate[d] the importance of this speech." *Trans Union LLC v. FTC*, 536 U.S. 915, 916 (2002). After *Sorrell*, Justice Kennedy's view in his *Trans Union* dissent is now the law of

**A.    Section 1681 is a content- and speaker-based restriction subject to "heightened" constitutional scrutiny.**

Section 1681c falls squarely within *Sorrell*'s holding.  Conveying truthful information about an individual's criminal record is a form of protected speech.  *Sorrell*, 131 S. Ct. at 2667.  Moreover, § 1681c is a content-based and speaker-based restriction on that speech. The statute targets a particular type of information—arrest and adverse records that are more than seven years old—and therefore is content-based.  15 U.S.C. § 1681c(a)(2).  The statute also is speaker-based.  Like the Vermont statute in *Sorrell*, which applied only to drug marketers, the restrictions in § 1681c apply only to consumer reporting agencies. Government agencies, publicly-accessible online databases, news organizations, and countless other services provide access to the same information but are not subject to § 1681c.  The statute thus "disfavors specific speakers" and is a "speaker-based" restriction. *Id.* at 2663.

As a content- and speaker-based restriction on commercial speech, § 1681c is constitutional only if the government can show "that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest."[2]  *Id.* at 2667-68.  "There must be a fit between the legislature's ends and the means chosen to

the land.  Moreover, the facts in *Trans Union* so closely parallel those in *Sorrell*, and the D.C. Circuit's reasoning in *Trans Union* so directly conflicts with the Supreme Court's in *Sorrell*, that *Trans Union* is no longer good law.

[2] Arrest records, court records, and other public criminal records disclosed in a consumer report are entitled to the full protection of the First Amendment, not the lesser protection afforded to commercial speech, because that information is not "proposing a commercial transaction" but instead is simply informing customers about important information used in their decision-making.  *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993).  Thus, strict scrutiny applies here.  However, as in *Sorrell*, there is no need distinguish between strict scrutiny and commercial speech scrutiny because § 1681c fails both tests and therefore "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied."  *Sorrell*, 131 S. Ct. at 2667.

- 9 -

accomplish those ends." *Id.* at 2668 (internal quotation marks omitted).  Section 1681c is

supported by three purported government interests:  relevancy, privacy, and accuracy.  *See*

15 U.S.C. § 1681(a); 115 Cong. Rec. 2412-13 (1969).  As in *Sorrell*, those interests do not

"fit" the content- and speaker-based prohibition and therefore the statute does not survive

heightened scrutiny.

> **1.    Section 1681c does not sufficiently "fit" the government's relevancy interests.**

The central government concern underlying § 1681c is relevance.  When FCRA was

first introduced in Congress in 1969, its sponsor, Senator Proxmire, read prepared remarks on

the Senate floor regarding the purposes and goals of the Act.  With respect to the ban on

criminal records codified in § 1681c, Senator Proxmire stated:

> [A] second major abuse of the credit reporting agencies is the dissemination of irrelevant information—that is, the information may be technically accurate but it may not serve any useful purpose.  One of the common irrelevancies perpetuated by credit reporting agencies is furnishing information on minor offenses committed many years ago.

115 Cong. Rec. 2412 (1969).  Senator Proxmire then explained that an individual's past

criminal record has little relevance to a consumer report:  "The fact that a man was arrested

as a youth 10 or 15 years ago has little bearing on his credit worthiness today.  But some

credit reporting agencies seem to think it does."  *Id.*

Under *Sorrell*, this relevancy interest fails to satisfy commercial speech scrutiny

because it lacks sufficient "fit" between the legislature's ends and the means chosen to

accomplish those ends.  As the legislative history indicates, the government's relevancy

interest is based on concerns that old criminal records are not sufficiently relevant to the

decisions made by lenders, employers, and other users of consumer reports.  *Id.*  But § 1681c

- 10 -

is not "drawn to achieve that interest." *Sorrell*, 131 S. Ct. at 2668. Specifically, § 1681c does not prohibit those businesses from *considering* old criminal records in their decision-making; rather, it merely prohibits one group of disfavored speakers from *disclosing* that information.

In *Sorrell*, the Court rejected a nearly identical argument. There, Vermont asserted that its prescriber data restrictions were necessary because drug company marketing had "a strong influence on doctors' prescribing practices" and that use of the information in marketing was causing doctors to prescribe brand-name drugs that were "more expensive and less safe than generic alternatives." *Sorrell*, 131 S. Ct. 2670-71. Simply put, Vermont believed that doctors were making bad decisions as a result of this truthful information, just as Congress believed employers and lenders were making bad decisions based on old criminal record information. But to address that concern, Vermont did not prohibit doctors from considering drug company marketing that relied on prescription data. Rather, Vermont prohibited the drug companies from using that prescription data in their sales practices.

The Supreme Court flatly rejected Vermont's argument that the statute was drawn to address it concerns. "Those who seek to censor or burden free expression often assert that disfavored speech has adverse effects. But the 'fear that people would make bad decisions if given truthful information' cannot justify content-based burdens on speech." *Id*. at 2670-71. As the Court explained, "[t]he First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." 131 S. Ct. at 2671.

The Supreme Court's holding directly undercuts the fit between the government's relevancy rationale and the scope of § 1681c. The government concluded that this

- 11 -

information has "little bearing" on the decisions for which consumer reports are used.  115 Cong. Rec. 2412.  But as *Sorrell* makes clear, that conclusion is not for the government to make.  "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish.  Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented."  *Id.* at 2671-72.  In sum, after *Sorrell*, the government cannot justify content-based, speaker-based bans on *disclosure* of truthful commercial information by pointing to a government interest in controlling how the recipients *use* that information.  The government could perhaps vindicate its relevancy concerns by prohibiting employers from *considering* old criminal records in their decision-making, but it cannot ban a single group of disfavored speakers (and no one else) from disclosing information to individuals who may lawfully use that information in their decision-making.

     This principle applies with even greater force in this case because, unlike in *Sorrell*, the information suppressed by the statute here is a matter of public record.  As the Supreme Court has held, "where the government has made certain information publicly available, it is highly anomalous" to punish private parties who later disseminate that information.  *The Florida Star v. B.J.F.*, 491 U.S. 524, 535 (1989).  "[D]issemination of information which is already publicly available is relatively unlikely to advance the interests in the service of which [the government] seeks to act."  *Id.*  "By placing the information in the public domain on official court records, [the government] must be presumed to have concluded that the public interest was thereby being served."  *Id.*  In short, "once truthful information was 'publicly revealed' or 'in the public domain' [the government] could not constitutionally

- 12 -

restrain its dissemination." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979).

Moreover, the government could have addressed its concerns by restricting public access to

the source material.  In other words, "the government had, but failed to utilize, far more

limited means of guarding against dissemination than the extreme step of punishing truthful

speech." *Florida Star*, 491 U.S. at 538.  In sum, the government's position is even weaker

than in *Sorrell*, because § 1681c punishes disclosure of information that is in the public

domain.

The statute also fails to fit the government's relevancy goals because it targets speech

by only a single, disfavored group.  The prescriber data restrictions in *Sorrell* had this

identical defect.  Although the law prohibited pharmacies from selling the prescriber data to

drug companies, it permitted pharmacies to sell the data to "insurers, researchers, journalists"

and virtually anyone else.  *Sorrell*, 131 S. Ct. at 2668.  The Court noted that Vermont could

have restricted the use of the prescriber data to "only a few narrow and well-justified

circumstances."  *Id.*  But the Court held that Vermont "did not enact a statute with that

purpose or design. Instead, Vermont made prescriber-identifying information available to an

almost limitless audience. The explicit structure of the statute allows the information to be

studied and used by all but a narrow class of disfavored speakers." *Id.*  Because of the

"widespread availability and many permissible uses" of that data, the Court held that

Vermont's interests do not "justify the burden that [the statute] places on protected

expression." *Id.*

Just as the Vermont statute permitted prescriber data to be sold to, and used by, "an

almost limitless audience," § 1681c permits employers to obtain criminal records older than

several years from virtually any source except a consumer reporting agency.  Government

agencies, court clerks, regulators, free online databases, neighbors, customers, community groups, news organizations, and countless other sources all are permitted to disclose this information to employers; only consumer reporting agencies are prohibited from doing so. Because the government's relevancy concerns apply regardless of the source of the information, a content- and speaker-based restriction solely on consumer reporting agencies does not "fit" the government's relevancy interest.

Finally, the statute fails to fit the government's relevancy concerns because it is riddled with exemptions.  For example, the prohibition on disclosure of criminal records more than seven years old does not apply to employment positions with an annual salary of $75,000 or more.  *See* 15 U.S.C. § 1681c(b).  This arbitrary exception further proves that the statute is not drawn to address the government's purported relevancy concerns.  Indeed, if old criminal records are truly irrelevant for a job paying $74,999 per year, those records would be similarly irrelevant for a job paying $75,001.  Simply put, the government's decision to prohibit disclosure for lower-paying jobs but not for higher-paying ones undermines any claim that the statute fits the goal of prohibiting employers from considering irrelevant information in their employment decisions.  The statute also exempts disclosure by certain recruiters and headhunters and disclosure to employers who are engaged in an investigation of possible employee misconduct.  *See* 15 U.S.C. §§ 1681a(o), (x).  As with the salary exemption, if old criminal records were truly irrelevant, the government would have precluded their use in the situations covered by these exemptions as well.

The Supreme Court addressed the use of similar exemptions on commercial speech in *Greater New Orleans Broadcasting Ass'n v. United States*, 527 U.S. 173, 188-90 (1999). There, Louisiana radio and television broadcasters challenged the constitutionality of a

- 14 -

federal law that prohibited them from broadcasting advertisements for gambling at private casinos in Louisiana because those broadcasts reached listeners in Texas and Arkansas, where casino gambling was illegal. *Id.* at 180-81. The Supreme Court invalidated the advertising restriction under the commercial speech test because the statute's many exemptions prevented the government some satisfying the "fit" requirement. The Court noted, for example, that broadcasters were permitted to advertise for casinos operated by Indian tribes and could advertise a "casino's amenities rather than directly promote its gaming aspects." *Id.* at 190-91. The Court held that the statute was "so pierced by exemptions and inconsistencies" that the government "cannot hope to exonerate" the underlying policy the statute was intended to address. *Id.* at 190.

Like the gambling restrictions in Greater New Orleans, § 1681c is pierced by arbitrary exemptions. For example, a consumer reporting agencies is free to disclose the complete arrest record of a highly-paid computer programmer who spends his days working alone in a cubicle, even if those arrests have nothing to do with the employee's job duties. But that same consumer reporting agency is prohibited from disclosing that a lower-paid day care worker or kindergarten teacher was arrested on child sex offenses that were later dismissed as part of a plea agreement, or that an applicant for a lower-paying school bus driver position who had minor traffic convictions also had been charged with reckless driving in each incident. Thus, regardless of whether the government's "stated policy goals may be proper," § 1681c "does not advance them in a permissible way" because its exemptions undermine the fit between those purported goals and the means used to achieve them. *Sorrell*, 131 S. Ct. 2670. Therefore, § 1681c violates the First Amendment.

- 15 -

### 2. Section 1681c also does not fit the government's privacy and accuracy concerns, to the extent those concerns apply.

FCRA as a whole is supported by two other policy interests:  privacy and accuracy. 15 U.S.C. § 1681(a).  However, as commentators have noted, these interests do not appear to apply to the ban on disclosure of old criminal records  That information is readily available in public records, in contrast to other portions of a consumer report that contain private information.  *See, e.g.*, Comment, *The New Commercial Speech and the Fair Credit Reporting Act*, 130 U. Pa. L. Rev. 131, 156 (1981).  Moreover, there are separate provisions of FCRA designed to ensure the accuracy of criminal records and similar public documents disclosed in a consumer report.  *See* 15 U.S.C. §§ 1681i and k.  Thus, the privacy and accuracy interests identified in FCRA's "statement of purpose" (15 U.S.C. § 1681) do not apply to criminal records subject to § 1681c.

In any event, the fit between these purported interests and the statute fails for the same reasons as the fit with the government's relevancy interest.  Indeed, in *Sorrell*, the Supreme Court considered the identical privacy issue.  Vermont argued that doctors' prescription practices were confidential and should not be shared with drug companies for use in marketing their drugs.  The Court held that the statute "is not drawn to serve that interest."  *Sorrell*, 131 S. Ct. 2668.  "Under Vermont's law, pharmacies may share prescriber-identifying information with anyone for any reason save one: They must not allow the information to be used for marketing."  The Court acknowledged that "the State might have advanced its asserted privacy interest by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances."  *Id.*  Instead, however, "Vermont made prescriber-identifying information available to an almost limitless audience. The explicit

- 16 -

structure of the statute allows the information to be studied and used by all but a narrow class of disfavored speakers." *Id.*

These identical defects plague the government's privacy interests in § 1681c. The statute permits *anyone* except a consumer reporting agency to disclose old criminal records. Thus, employers can obtain the information from "an almost limitless" array of government agencies, court clerks, publicly-accessible databases, news organizations, and other sources. *Id.* Moreover, as with its relevancy concerns, the government's privacy interests are wildly underinclusive. Any plausible privacy interest applicable to criminal records older than seven years would apply equally to criminal records that are more recent. This is particular true in the digital age, where records are stored electronically and a document created decades ago can be accessed as easily as one created yesterday. Likewise, any privacy interests in this public information would apply equally whether the applicant is seeking a $35,000 a year position or a $75,000 one—but the statute only prohibits disclosure of the criminal records of the former, not the latter. *See* 15 U.S.C. § 1681c(b). The same is true for disclosure by recruiters and headhunters, and disclosure to an employer engaged in an internal investigation, yet the statute expressly permits disclosure in both those scenarios. *See* 15 U.S.C. §§ 1681a(o), (x). As the Supreme Court has explained, "[w]hen [the government] attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly." *Florida Star*, 491 U.S. at 540. In short, to the extent FCRA's privacy concerns even apply to § 1681c, those concerns do not "fit" with the content- and speaker-based prohibition and therefore fail to satisfy heightened constitutional scrutiny.

The government's accuracy concerns fare no better. First, the statute requires a

US2008 2836363.8

consumer reporting agency to follow reasonable procedures to ensure "maximum possible accuracy" for all information in the report.  15 U.S.C. § 1681e(b).  Second, the statute further addresses accuracy issues for criminal records and other public documents by requiring consumer reporting agencies that disclose criminal records to either contemporaneously notify the consumer or maintain "strict procedures" that ensure the information is "complete and up to date."  15 U.S.C. § 1681k(a)(2).  Third, it provides for a dispute process under which a consumer reporting agency must re-investigate any information that the consumer disputes and take measures to prevent re-occurrence of disclosure of any inaccurate information.  *See* 15 U.S.C. § 1681i.  These more narrowly-tailored provisions in FCRA undercut any claim that a total ban on disclosure of that information "fits" the government's accuracy interests.  Moreover, as with the relevancy and privacy rationale, the statute is not drawn to adequately address the government's accuracy rationale because the same information (which comes from public court records) is available from countless other sources that the statute does not seek to regulate.  Likewise, the statute is pierced with exemptions unrelated to the government's accuracy concerns.  For example, there is no plausible reason why government records for someone earning $75,000 per year are more likely to be accurate than similar government records for someone earning only $50,000 per year, or why information disclosed by a headhunter or disclosed to an employer involved in an internal investigation is more accurate than the same public information disclosed for other purposes.  Thus, the government's accuracy rationale does not fit § 1681c and the statute is unconstitutional.

## **CONCLUSION**

The Supreme Court's decision in *Sorrell* marks a dramatic shift in the First

- 18 -

Amendment protection afforded to disclosures of truthful commercial information.  Under *Sorrell*, the government cannot impose content- and speaker-based limitations on disclosure of commercial information if, at the same time, it permits others to disclose that same information, creates exemptions that undermine the government's purported goals, and seeks to limit speech itself rather than regulating the underlying use of that speech.  Section 1681c, like the statute in *Sorrell*, is a content- and speaker-based prohibition that suffers from all of these defects.  It therefore violates the First Amendment.  The Court should enter judgment on the pleadings with respect to Plaintiff's § 1681c claim because Plaintiff cannot maintain a statutory claim premised on an unconstitutional statute.

Respectfully submitted this 16th day of September, 2011.

_____/s/ John P. Jett_____

| | |
|---|---|
| Michael O. Kassak, Esq. | Cindy D. Hanson (admitted *pro hac vice*) |
| WHITE & WILLIAMS LLP | Georgia Bar No. 323920 |
| LibertyView, Suite 400 | John P. Jett (admitted *pro hac vice*) |
| 457 Haddonfield Rd. | Georgia Bar No. 827033 |
| Cherry Hill, NJ 08002-2220 | KILPATRICK TOWNSEND & |
| Telephone: (856) 317-3600 |     STOCKTON LLP |
| | 1100 Peachtree Street, Suite 2800 |
| | Atlanta, Georgia 30309 |
| | Telephone:    (404) 815-6500 |
| | Facsimile:    (404) 541-3240 |

*Counsel for Defendant General Information Services, Inc.*

US2008 2836363.8

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I electronically filed the foregoing

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, WITH

SUPPORTING MEMORANDUM OF LAW with the Clerk of Court using the CM/ECF

system which will automatically send email notification of such filing to all attorneys of

record:

Noah Axler
DONOVAN SEARLES, LLC
1845 Walnut St.
Ste 1100
Philadelphia, PA 19103
215-732-6067
Fax: 215-732-8060
Email: naxler@donovansearles.com

James A. Francis
John Soumilas
Erin A. Novak
FRANCIS & MAILMAN, PC
Land Title Bldg 19th Floor
100 S. Broad St.
Philadelphia, PA 19110
215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com

Janet F. Ginzberg
Michael G. Hollander
COMMUNITY LEGAL SERVICES
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3794
Email: jginzberg@clsphila.org
Email: mhollander@clsphila.org

and in addition served a copy by certified mail on the following:

Eric Holder
Attorney General of the United States
UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

/s/ John P. Jett
John P. Jett

*Counsel for Defendant General Information Services, Inc*

- 20 -