UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

SHAMARA T. KING, on
behalf of herself and all others similarly
situated,

               Plaintiff,

      v.

GENERAL INFORMATION SERVICES,
INC.,

            Defendant.

Case No.:  2:10-cv-06850-PBT

**GENERAL INFORMATION SERVICES, INC.'S
REPLY TO THE BRIEF OF THE UNITED STATES**

9349292v.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 2

    I.   As a matter of law, the government does not have a "substantial interest" in protecting the privacy of information in public government records.......................................................................... 4

    II.  Under Sorrell, § 1681c does not "fit" the government's purported privacy interest.................................................................................... 7

        A.  The privacy rationale fails the "fit" test because the government can achieve its privacy goals without prohibiting any protected speech. ......................................................................................... 8

        B.  The privacy rationale fails the "fit" test because the government targeted a single, disfavored group of speakers and not others whose speech implicates the same privacy concerns. ...................................................................................... 11

        C.  The privacy rationale fails the "fit" test because it contains numerous exceptions where the same privacy rationale is equally applicable ................ 14

    III. The government concedes that § 1681c is not supported by "free-standing" interests in relevancy or accuracy ........................................................................ 17

CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

Page

Califano v. Aznavorian, 439 U.S. 170 (1978) .................................................................15

Cox Broad. Corp. v. Cohn, 420 U.S. 469 (1975).......................................................1, 4, 10

Edenfield v. Fane, 507 U.S. 761 (1993) ..............................................................2, 3, 13, 17

Friendly House v. Whiting, No. CV 10-1061, 2012 WL 671674 (D. Ariz. Feb.
29, 2012) ..................................................................................................................8

Greater New Orleans Broadcasting Ass'n v. United States, 527 U.S. 173 (1999) ......15, 16

Minority Television Project, Inc. v. Fed. Commc'ns Comm'n, 676 F.3d 869 (9th
Cir. 2012) ................................................................................................................8

Rubin v. Coors Brewing Co., 514 U.S. 476 (1995)................................................3, 13, 17

Scheetz v. The Morning Call, Inc., 946 F.2d 202 (3d Cir. 1991) .......................................5

Smith v. Daily Mail Publ'g Co., 443 U.S. 97 (1979) ...........................................................4

Sorrell v. IMS Health, Inc, 131 S. Ct. 2653 (2011) ..........................2, 3, 6, 7, 8, 11, 12, 14

United States v. Stevens, 130 S. Ct. 1577 (2010) ..........................................................2, 15

The Florida Star v. B.J.F., 491 U.S. 524 (1989) .....................................................4, 12, 16

Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002).........................................9, 10, 11

Trans Union Corp. v. Fed. Trade Comm'n, 245 F.3d 809 (D.C. Cir. 2001) .......................6

Trans Union LLC v. Fed. Trade Comm'n, 536 U.S. 915 (2002) .........................................6

U.D. Registry, Inc. v. California, 50 Cal. Rptr. 3d 647 (Ct. App. 2006)..........................5, 6

United States Department of Justice v. Reporters Committee for Freedom of the
Press, 489 U.S. 749 (1989) ............................................................................6, 7, 10

## STATUTES

Mass. Gen. Laws ch. 6, § 172....................................................................................10

Pursuant to the Court's May 22, 2012 scheduling order, Defendant General Information Services, Inc. ("GIS") respectfully submits this reply in support of its motion for judgment on the pleadings and in response to the United States government's brief as intervenor.

## INTRODUCTION

The government defends the constitutionality of § 1681c based on a single governmental interest: privacy.  It contends that consumer reporting agencies pose "a particularly significant threat" to privacy because of the "large amounts" of public information they disclose to others.  (Gov't Br. 13.)  This argument fails for multiple reasons.

*First*, as a matter of law, the government cannot suppress protected speech based on a purported "privacy" interest in material the government willingly chooses to disclose in public government records.  As the Supreme Court has repeatedly held, if the government truly is concerned with the privacy of that public information, it should not disclose the information in public records in the first place.  *See Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 496 (1975).

*Second*, the government presented no justification for its naked assertion that when consumer reporting agencies share publicly-available information with others, it poses a greater threat to privacy than when that same public information is shared by anyone else. The fact that free online databases, government websites, and countless other sources provide access to that same publicly-available information, in even higher volumes, directly refutes the government's unsupported privacy claims.  Under *Central Hudson*, the government has the burden to justify a restriction of speech by presenting actual evidence of the purported

harms, not mere speculation and conjecture. *Edenfield v. Fane*, 507 U.S. 761, 770-71

(1993); *see also Sorrell v. IMS Health, Inc*, 131 S. Ct. 2653, 2667 (2011). It has failed to do

so here.

*Third*, § 1681c is pierced with arbitrary exceptions and limitations that undercut any

claim that the government's concern about privacy is truly substantial. There is no reason

why a person earning $75,000 per year is entitled to less privacy than someone earning only

$74,000 per year. There is no reason why disclosure of public information about an

individual's criminal history by a consumer reporting agency invades a person's privacy, but

disclosure of the same information by a headhunter, recruiter, or private investigator in a

company investigation does not. The government argues that these exceptions simply reflect

"balancing" of privacy interests with business interests. But the Supreme Court repeatedly

has held that this type of balancing has no place in First Amendment analysis. *See United*

*States v. Stevens*, 130 S.Ct. 1577, 1585 (2010). If the purported interest in privacy were truly

"substantial," the government would not be willing to forgo it in many situations simply to

appease business interests. Accordingly, for the reasons explained below, the government has

not met its burden to show that § 1681c is constitutional.

## ARGUMENT

Before addressing the merits of the government's claim, it is helpful to recall the

applicable constitutional standard. The government devotes a significant portion of its brief

to the *Central Hudson* test for restrictions on commercial speech. (Gov't Br. 4-9.) GIS does

not concede that sharing truthful public information with its customers is commercial speech

governed by *Central Hudson*. Commercial speech is speech "proposing a commercial

transaction," meaning speech such as sales pitches and advertising. (GIS Br. 9 n.2) As the

Court explained in *Sorrell*, whether disclosure of truthful commercial information receives strict scrutiny or commercial speech scrutiny is an open question. *See* 131 S. Ct. at 2667. But as in *Sorrell*, "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Id.* Thus, in its opening brief and in this reply brief, GIS applies the *Central Hudson* test as interpreted in *Sorrell*.

Notably, the government downplays two of the most important principles of a commercial speech challenge under *Central Hudson*. First, the government, not GIS, has the burden of justifying the restriction: "[i]t is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993) (quotations and citations omitted); *see also Sorrell*, 131 S. Ct. at 2667. Second, the government must meet that burden by producing *actual evidence* of its purportedly substantial governmental interest. It cannot rely on naked assertions in its legal briefs. *Edenfield*, 507 U.S. at 770-71; *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-71; *Rubin*, 514 U.S. at 487.

These are critical points because, as explained below, the government relies entirely on privacy as its rationale for § 1681c. In doing so, the government repeatedly asserts that when consumer reporting agencies share public records and other public information, it poses a significantly greater threat to privacy than when the same information is disclosed by countless other individuals and businesses. (Gov't Br. 10, 15-16, 19-20.) But the government has no actual evidence that this is true. The unlimited availability of websites

-3-

9349292v.1

like the federal government's PACER online database, and countless free online websites

offering similar public records information, directly refute the government's unsupported

claim.  Thus, for the reasons stated below, the government has failed to meet its burden to

show that § 1681c's restrictions on disclosure of public information are constitutional.

**I.     As a matter of law, the government does not have a "substantial interest" in protecting the privacy of information in public government records.**

At the outset, the Court should reject the government's purported privacy rationale for

§ 1681c.  The government's position in this case is truly unprecedented.  Simply put, the

government contends that when it voluntarily chooses to release information about its

citizens in public government records, it can nevertheless punish people *on privacy grounds*

for sharing that publicly-available information with others.

No court has *ever* found a privacy interest in public records sufficient to permit

suppression of protected speech.  To the contrary, every court to address the issue has

reached the opposite conclusion.  The Supreme Court held decades ago that "once the

truthful information was 'publicly revealed' or 'in the public domain' [the government]

could not constitutionally restrain its dissemination." *Smith v. Daily Mail Publ'g Co.*, 443

U.S. 97, 103 (1979).  In *The Florida Star v. B.J.F.*, 491 U.S. 524, 535 (1989), the Court

emphasized that "dissemination of information which is already publicly available is

relatively unlikely to advance the interests in the service of which [the government] seeks to

act." *Id.*  "By placing the information in the public domain on official court records, [the

government] must be presumed to have concluded that the public interest was thereby being

served." *Id.*; *see also Cox Broad.*, 420 U.S. at 495-96.

Lower courts have reached the same conclusion. In *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991), the Third Circuit expressly rejected the notion that individuals have any privacy rights in public information. In that case, the plaintiff sued after a newspaper published embarrassing details of alleged domestic abuse taken from a police report. The Third Circuit held that "[i]n reporting this potential crime to the police, Rosann Scheetz could not reasonably expect the information to remain secret. The police could have brought charges without her concurrence, at which point all the information would have wound up on the public record, where it would have been non-confidential." *Id.* The court explained that information published in public government records "is not like medical or financial records" because, once made public, the information cannot be "reasonably expected to remain private." *Id.*

The California Court of Appeals applied this reasoning to a consumer reporting law that permitted consumers to "freeze" their report and prevent its disclosure to others. *See U.D. Registry, Inc. v. California*, 50 Cal. Rptr. 3d 647 (Ct. App. 2006). The law was intended to protect privacy and prevent identity theft. A consumer reporting agency challenged the law on First Amendment grounds to the extent that it prohibited disclosure of publicly-available information. Applying *Central Hudson*, the court enjoined the statute's application to publicly-available information, emphasizing the "public nature of that information; it is available to members of the public without resort to plaintiff's reports." *Id.* at 662. Thus, "[e]ven if that information could be of some use to a potential identity thief, it would be available without resort to plaintiff's credit reports." *Id.* at 662. In short, the government does not have *any* interest in maintaining the "privacy" of information it chooses

to place in public government records, much less a substantial interest sufficient to suppress protected speech.

The government responds by citing the D.C. Circuit's decision in *Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001), which held that the government's interest in "protecting the privacy of consumer credit information" is "substantial." *Id.* at 818. But Trans Union dealt with certain *private* financial information in credit reports, such as the types of loans and credit cards used by a particular consumer. *Id.* at 812. That private financial information, which is only available in a consumer report and not accessible to the public, is readily distinguishable from public government records that are "available to members of the public without resort to [consumer] reports." *U.D. Registry,* 50 Cal. Rptr. 3d at 662. Moreover, as GIS explained in its opening brief, *Trans Union* is no longer good law. (GIS Br. 8 n.1.) Justice Kennedy dissented from the denial of certiorari in *Trans Union*, explaining that the D.C. Circuit had "denigrate[d] the importance of this speech" by consumer reporting agencies and that the speech was entitled to heightened constitutional scrutiny. *Trans Union LLC v. Fed. Trade Comm'n*, 536 U.S. 915 (2002). Justice Kennedy's views became the law of the land when he repeated them in his majority opinion in *Sorrell*. 131 S. Ct. at 2667.

The government also contends that the Supreme Court's decision in *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 764 (1989), shows that individuals have a "privacy interest in preventing widespread dissemination of compilations of data that are individually available in scattered public records." (Gov't Br. 15 n.2.) *Reporters Committee* was a Freedom of Information Act (FOIA) case, not a First Amendment case. *Id.* The issue in *Reporters Committee* was

-6-

whether the press could force the government to disclose a non-public document simply because the information contained within it was gathered from public records. *Id.* That situation is readily distinguishable from the situation here, where the government seeks to punish private citizens for sharing information the government willingly chose to make public. Nothing in *Reporters Committee* suggests that the government could prohibit dissemination of the public information itself; to the contrary, the Court's holding in *Reporters Committee* reaffirms that individuals have no privacy right in the "scattered public records" themselves because they are "freely available" to the public. *Id.* It is from those public records, not non-public information like the document at issue in *Reporters Committee*, that consumer reporting agencies compile their reports.

In sum, the government's entire defense of § 1681 turns on the dubious claim that the government has a substantial interest in punishing its citizens on privacy grounds for sharing truthful, publicly-available information obtained from the government's own public records. That argument is contrary to all legal precedent and to common sense. The Court should reject it.

## II.   Under *Sorrell*, § 1681c does not "fit" the government's purported privacy interest.

Even if the government has a substantial interest in the privacy of public records (and it does not), § 1681c still is unconstitutional because the statute does not "fit" that privacy interest. The Supreme Court discussed the "fit" between restrictions on disclosure of truthful information and privacy interests at length in *Sorrell*. 131 S. Ct. at 2668-2672.

The government attempts to downplay *Sorrell*'s holding by asserting that "*Sorrell* does not 'mark[] a substantial shift in the protection afforded to commercial speech.'"

(Gov't Br. 6.)  Courts disagree.  The Ninth Circuit recently held that "[a]fter *Sorrell*, it is clear that commercial speech is subject to a demanding form of intermediate scrutiny analysis." *Minority Television Project, Inc. v. Fed. Commc'ns Comm'n*, 676 F.3d 869, 881 n.8 (9th Cir. 2012).  The United States District Court for the District of Arizona similarly concluded that *Sorrell* "refined the *Central Hudson* test, holding that if a ban on commercial speech is content-based, 'heightened judicial scrutiny is warranted.'" *Friendly House v. Whiting*, No. CV 10-1061, 2012 WL 671674, at *3 (D. Ariz. Feb. 29, 2012).

In any event, the government's characterization of *Sorrell* is irrelevant.  This Court must follow *Sorrell* and, as explained below, the government's purported privacy rationale fails *Sorrell*'s "fit" test for multiple reasons.

> **A.    The privacy rationale fails the "fit" test because the government can achieve its privacy goals without prohibiting any protected speech.**

First, the government's privacy argument fails because the government could vindicate that interest, without restricting any speech, by simply prohibiting access to the public records themselves. As the government concedes (Gov't Br. 8), under *Central Hudson* a restriction on speech must be "no more extensive than necessary" to achieve the government's interest.  This is what *Sorrell* refers to as the "fit" test.  *See Sorrell*, 131 S. Ct. at 2667-68.  Of critical importance to this case, a restriction on speech always will fail the "fit" test if there is an alternative that would equally advance the government's interest and would not restrict any speech at all.  As the Supreme Court explained a decade ago while applying *Central Hudson*, "we have made clear that if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, *the*

Government *must* do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002) (emphasis added).

*Thompson* involved a federal statute that permitted pharmacists to sell "compounded drugs," which combine multiple prescription drugs together, but prohibited pharmacies from advertising those drugs. *Id.* at 360. The law was intended to protect small-scale compounding at local pharmacies, but prohibit large-scale manufacturing of what are, in effect, new drugs not approved by the FDA. *Id.* at 368-71.

The Supreme Court invalidated the statute under *Central Hudson* because "[s]everal non-speech-related means of drawing a line between compounding and large-scale manufacturing might be possible here." *Id.* at 371. For example, "the Government could ban the use of commercial scale manufacturing or testing equipment for compounding drug products" or simply restrict "the amount of any particular compounded drug . . . that a pharmacist or pharmacy may make or sell in a given period of time." *Id.*

The Court acknowledged that the statute was a "convenient means of achieving [the government's] interests." *Id.* at 373. But that is not enough under *Central Hudson*. "[I]f the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* at 371. The Court concluded with a stern reminder that "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Id.* at 373.

The government's privacy argument in this case is precluded by *Thompson*. The government contends that when consumer reporting agencies obtain public records from the government and then share that information with others, it leads to "disclosure of potentially embarrassing or harmful information." (Gov't Br. 11.) But the government can readily

-9-

vindicate that interest by declining to make those records public in the first place, and requiring states to do the same.  As the Supreme Court explained in *Cox Broadcasting*, another case involving a statute banning disclosure of information in public court records, "[i]f there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information."  420 U.S. at 496.  The government "must weigh the interests in privacy" with "the interests of the public to know" and, where the privacy interest is substantial, must not make that information public to begin with.  *Id.*  "Once true information is disclosed in public court documents open to public inspection," the government's interest in maintaining privacy in those records is lost.  *Id.*  The Supreme Court's decision in *Reporters Committee*, the FOIA case on which the government relies to illustrate its privacy concern, underscores the government's power to address those concerns without restricting speech.  In that case, the Supreme Court upheld the government's decision not to disclose an internal, non-public document comprised of public information in response to a FOIA request by reporters.  *See Reporters Committee*, 489 U.S. at 764.

Here, too, the government could decline to disclose these criminal records to the public in the first instance, thus fully vindicating its privacy concern.  This is not a hypothetical notion; Massachusetts, for example, passed such a law in 2010.  *See* Mass. Gen. Laws ch. 6, § 172 (effective May 4, 2012).  Here, however, § 1681c singles out and punishes one group of disfavored speakers for assembling that public information and sharing it with others.  To be sure, as in *Thompson*, restricting consumer reporting agencies' speech may be a "convenient means" of addressing the government's privacy concerns.  535 U.S. at 371.  But under *Central Hudson*, the fact that the speech restriction is substantially more

-10-

"convenient" to the government is irrelevant; if there is an option that achieves the same goals and does not restrict speech, the government must choose that option. *Id*. "[R]egulating speech must be a last—not first—resort." *Id.* at 373. Thus, the government's privacy argument is insufficient to justify § 1681c's restriction on protected speech.

**B.     The privacy rationale fails the "fit" test because the government targeted a single, disfavored group of speakers and not others whose speech implicates the same privacy concerns.**

GIS also showed that, like the statute in *Sorrell*, § 1681c is unconstitutional because it targets a narrow group of disfavored speakers and lets virtually anyone else speak on the same subject. (GIS Br. 23-25.) Countless individuals and organizations actively disseminate this same information on a daily basis: free online databases, newspapers and other media, community watch groups, and innumerable federal, state, and local government agencies. But § 1681c only targets consumer reporting agencies. In response, the government argues that this is irrelevant because "FCRA does not single out CRAs because of the messages they convey, but rather because they assemble and disseminate such large amounts of information that they pose a particularly significant threat to individuals' privacy." (Gov't Br. 13.)

The Supreme Court rejected this *identical* argument in *Sorrell*. There, Vermont argued that the large-scale collection and disclosure of doctor's prescription practices to data brokers posed special confidentiality concerns. The Court rejected that argument, noting that Vermont could have restricted the use of the prescriber data to "only a few narrow and well-justified circumstances." *Sorrell*, 131 S. Ct. at 2668. But the Court held that Vermont "did not enact a statute with that purpose or design. Instead, Vermont made prescriber-identifying information available to an almost limitless audience. The explicit structure of the statute allows the information to be studied and used by all but a narrow class of disfavored

-11-

speakers." *Id.* In that analysis, the Court was unconcerned by the fact that data brokers were compiling and disclosing the prescription data on a far larger scale than any university researchers, news media, and others who may desire to review that same data. *Id.*

Moreover, *Sorrell* was not the first Supreme Court decision to reject the government's reasoning. In *Florida Star*, the Court addressed a statute that prohibited release of certain public information about crime victims through an "instrument of mass communication." 491 U.S. at 540. The Court invalidated the statute, holding that "[w]hen a State attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly, to the smalltime disseminator as well as the media giant." *Id.*

Under *Sorrell* and *Florida Star*, § 1681c is unconstitutional. The fact that consumer reporting agencies "disseminate such large amounts of information" is irrelevant under a First Amendment privacy analysis. To satisfy the "fit" test, a restriction on speech grounded in privacy must apply "evenhandedly, to the smalltime disseminator as well as the media giant." 401 U.S. at 540. Thus, because the government concedes that § 1681c seeks *only* to restrict consumer reporting agencies, and not countless other individuals and businesses disclosing the identical information, the government's privacy rationale fails as a matter of law.

Finally, there is an even more fundamental flaw in the government's privacy argument: it is factually wrong. Free online databases, government websites and document repositories, online media outlets, and countless other sources disseminate the same information, in the same volume, without regulation. For example, anyone can obtain a PACER login and search a massive, nation-wide federal database of criminal history

information dating back far beyond seven years and including criminal information for those not ultimately convicted of a crime. *See Public Access to Court Electronic Records, available at* http://www.pacer.gov (last visited June 1, 2012). Many states offer similar services. *See, e.g., Florida Department of Law Enforcement Criminal History Information,* https://web.fdle.state.fl.us/search/app/default (last visited June 1, 2012); *New York State Unified Court System WebCrims,* http://iapps.courts.state.ny.us/webcrim_attorney/ DefendantSearch (last visited June 1, 2012); *Texas Department of Public Safety Criminal History Name Search,* https://records.txdps.state.tx.us/DpsWebsite/CriminalHistory/ (last visited June 1, 2012). Numerous criminal background checking websites offer lists of internet links to state and federal databases containing public criminal record information, putting this information at the touch of a button for even the most casual internet users. *See, e.g., CrimCheck Free Records,* http://www.crimcheck.com/freerecords.htm (last visited June 1, 2012). The specific criminal history information that Plaintiff alleges GIS disclosed in this case is readily available online directly from the state judiciary. *See Docket Sheet in Pennsylvania's United Judicial System Webportal,* http://ujsportal.pacourts.us/Docket Sheets/CourtSummaryReport.ashx?docketNumber=CP-46-CR-0001385-2000 (last visited June 1, 2012). Thus, the government's unsupported claim that consumer reporting agencies pose "a particularly significant threat" because of the "large amounts of information" they disclose rings hollow. (Gov't Br. 13.)

Moreover, as noted above, the Supreme Court repeatedly has held that the government must support its purported governmental interests under *Central Hudson* with *actual evidence*, not mere speculation and conjecture. *Edenfield*, 507 U.S. at 770-71; *Rubin*, 514 U.S. at 487. Here, the government failed to produce *any* evidence showing that

-13-

consumer reporting agencies pose a special privacy threat different from other sources of the same information.  The existence of the websites cited above directly refutes the government's position, which is accompanied by no citation and based solely on the government's own speculation.  In sum, under *Sorrell*, the Court should reject the government's argument because "[t]he explicit structure of the statute allows" criminal record information to be compiled and disclosed "by all but a narrow class of disfavored speakers." *Sorrell*, 131 S. Ct. at 2668.

### C.    The privacy rationale fails the "fit" test because it contains numerous exceptions where the same privacy rationale is equally applicable.

GIS also showed that § 1681c does not fit the government's privacy rationale because it has numerous exceptions that permit disclosure where the purported privacy rationale would be equally applicable.  (GIS Br. 14-15.)  In particular, the statute permits disclosure of old criminal records to employers for jobs paying $75,000 or more, *see* § 1681c(b); permits disclosure by recruiters and headhunters, *see* § 1681a(o); and permits disclosure to employers performing investigations of existing employees, *see* § 1681a(y).

The government responds to the exceptions for jobs paying more than $75,000 by explaining that the exception "reflects Congress's judgment that, 'because of the large amounts of money involved the user of the credit report has a right to go back beyond 7 years.'"  (Gov't Br. 12.)  But this explanation does not fit a governmental *privacy* interest, although it perhaps would support a separate *relevancy* one.  There is no conceivable reason why a private citizen earning $74,000 per year is entitled to more privacy than one earning $75,000.  Likewise, the government responds to the internal investigation exception by stating that it is necessary "because employers would otherwise be deterred 'from using

-14-

9349292v.1

outside investigators, which, because of their objectivity and expertise, are generally preferred, and in many cases, legally required.'" (Gov't Br. 14.) But again, this is not a *privacy* rationale. An employee's privacy is impacted equally whether disclosure comes from a consumer reporting agency or a private investigator. Lastly, the government wholly ignores the exception for recruiters and headhunters. (Gov't Br. 12-15.) There is no plausible explanation for why a potential employee's privacy is harmed when a consumer reporting agency discloses old criminal information but not when a headhunter does the same thing.

The government contends that these seemingly arbitrary exceptions are permissible because the government must "balance protecting individuals' privacy against businesses' competing interest in obtaining complete information about people to whom they might offer a loan, a job, or an insurance policy." (Gov't Br. 12.) Tellingly, the government does not cite any case law supporting this "balancing" argument, and there is none. To be sure, this sort of arbitrary balancing and line-drawing is permissible under the rational basis test that applies to ordinary social and commercial regulation. *See, e.g., Califano v. Aznavorian*, 439 U.S. 170, 174-75 (1978). But that "balancing" does not apply where the law restricts speech protected by the First Amendment: "The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits." *Stevens*, 130 S.Ct. at 1585.

For example, in *Greater New Orleans Broadcasting Ass'n v. United States*, 527 U.S. 173, 188-90 (1999), the government banned advertising for privately-owned casinos, but permitted advertising by Indian casinos. The government explained that the goal of the ban was to reduce the social costs of gambling and to assist those states that chose to prohibit

gambling altogether. *Id.* at 185.   The government justified the exception for Indian casinos by pointing to "revenue needs of States and tribes that conduct casino gambling," and the fact that "net revenues generated by the tribal casinos are dedicated to the welfare of the tribes and their members." *Id.* at 191.

The Supreme Court invalided that statute under *Central Hudson. Id.* at 190.   The Court noted that this type of "balancing" is permissible in ordinary commercial regulations: "there may be valid reasons for imposing commercial regulations on non-Indian businesses that differ from those imposed on tribal enterprises. It does not follow, however, that those differences also justify abridging non-Indians' freedom of speech more severely than the freedom of their tribal competitors." *Id.* at 193.   The Court held that, although the Indian casino exception may vindicate other governmental interests, it undercuts the stated goals of the challenged statute; thus, the statute failed to satisfy the *Central Hudson* "fit" test. *Id.* at 190.

As in *Greater New Orleans*, these exceptions undercut the fit between § 1681c and the government's purported privacy interest.   If the government truly believed that the privacy of information in public criminal records was such a substantial interest that the government must silence protected First Amendment speech, it would do so in all circumstances, not "balance" that privacy interest with other business interests.   As the Supreme Court has explained, "[w]hen [the government] attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly." *Florida Star*, 491 U.S. at 540.

Finally, as with the government's other arguments, the complete lack of evidence dooms the government's argument concerning these exceptions.  For example, the government's response to the $75,000 exception is premised on the claim that businesses are more interested in the old arrest records of employees earning $75,000 or more than the arrest records of their lesser-earning colleagues.  (Gov't Br. 12.)  This is not intuitively obvious.  A potential employee with many years of experience—who thus earns far more than an entry level applicant—has a long job history that the employer can investigate.  The entry level employee, by contrast, is relatively untested and unknown.  Criminal history may prove far more valuable to an employer in evaluating the lower-paid rookie than the higher-paid industry veteran.

Simply put, the government cannot rely on its own speculation (or that of Congress) to justify the speech restrictions in § 1681c.  The Supreme Court repeatedly has held that, under *Central Hudson*, the government must prove a purportedly "substantial" governmental interest with *actual evidence*, not mere speculation and conjecture.  *Edenfield*, 507 U.S. at 770-71; *Rubin*, 514 U.S. at 487.  Here, the government presents no evidence to support its explanations for these exceptions, many of which defy common sense.  Accordingly, these exceptions demonstrate that lack of fit between the government's purported privacy interest and the speech restrictions in § 1681c.

**III.    The government concedes that § 1681c is not supported by "free-standing" interests in relevancy or accuracy.**

As explained in GIS's opening brief, the only governmental interest for § 1681c identified in the legislative history is relevancy.  (GIS Br. 10.)  GIS explained at length in its

opening brief why that relevancy interest cannot support § 1681c's prohibition on protected speech.  (GIS Br. 10-15.)

In response, the government abandons that relevancy interest, conceding that § 1681c does not further "a freestanding interest in preventing dissemination of 'irrelevant' information." (Gov't Br. 18.)  The government similarly concedes that "[s]ection 1681c does not serve a freestanding interest in preventing dissemination of 'inaccurate' information." (Gov't Br. 19.)  Instead, the government ties relevancy and accuracy to its privacy argument by asserting that "accuracy concerns—like the relevancy concerns previously discussed—are simply one reason why Congress chose generally to protect individuals' privacy at the expense of businesses' ability to obtain complete information." (Gov't Br. 19.)

Simply put, the only substantial governmental interest on which the government relies to defend § 1681c is privacy.  As explained above, that interest is insufficient to justify § 1681c's restriction on speech.  The government presents *no evidence* that consumer reporting agencies are a greater threat to privacy than all other sources of the same information, relying instead on naked, unsupported assertions in its legal brief.  Moreover, § 1681c is pierced with arbitrary exceptions and line drawing that undercuts any claim that the government's concern about privacy is truly substantial.  Finally, the government could have vindicated its purported privacy concern without burdening any speech at all by simply restricting access to the public records in the first place.  Any one of these factors *alone* is sufficient to invalidate the statute under *Central Hudson*; together, they leave no doubt that § 1681c's restrictions on the disclosure of truthful public information violate the First Amendment and must be invalidated.

## **CONCLUSION**

The Court should grant Defendant's motion for judgment on the pleadings with respect to Plaintiff's § 1681c claim because Plaintiff cannot maintain a statutory claim premised on an unconstitutional statute.

Respectfully submitted this 1st day of June, 2012.

| | |
|---|---|
| _____/s/ Michael O. Kassak_____ | _____/s/ John P. Jett_____ |
| Michael O. Kassak, Esq. | Cindy D. Hanson (admitted *pro hac vice*) |
| WHITE AND WILLIAMS LLP | John P. Jett (admitted *pro hac vice*) |
| LibertyView, Suite 400 | KILPATRICK TOWNSEND & |
| 457 Haddonfield Rd. | STOCKTON LLP |
| Cherry Hill, NJ 08002-2220 | 1100 Peachtree Street, Suite 2800 |
| Telephone: (856) 317-3600 | Atlanta, Georgia 30309 |
| | Telephone:   (404) 815-6500 |
| | Facsimile:   (404) 541-3240 |
| | |
| | Richard D. Dietz (*pro hac vice* pending) |
| | KILPATRICK TOWNSEND & |
| | STOCKTON LLP |
| | 1001 W. Fourth Street |
| | Winston-Salem, North Carolina 27101 |
| | Telephone: (336) 607-7300 |

*Counsel for Defendant General Information Services, Inc.*

-19-

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, I electronically filed the foregoing REPLY TO

THE BRIEF OF THE UNITED STATES with the Clerk of Court using the CM/ECF system

which will automatically send email notification of such filing to all attorneys of record:

Noah Axler
DONOVAN SEARLES, LLC
1845 Walnut St.
Ste 1100
Philadelphia, PA 19103
215-732-6067
Fax: 215-732-8060
Email: naxler@donovansearles.com

James A. Francis
John Soumilas
Erin A. Novak
FRANCIS & MAILMAN, PC
Land Title Bldg 19th Floor
100 S. Broad St.
Philadelphia, PA 19110
215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com

Janet F. Ginzberg
Michael G. Hollander
COMMUNITY LEGAL SERVICES
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3794
Email: jginzberg@clsphila.org
Email: mhollander@clsphila.org

Tony West
Maame Ewusi-Mensah Frimpong
Michael S. Blume
Kenneth L. Jost
Gerald C. Kell
U.S. DEPARTMENT OF JUSTICE
P.O. Box. 386
Washington, D.C. 20044
Email: gerald.kell@usdoj.gov


        /s/ Michael O. Kassak , Esquire
        Michael O. Kassak, Esquire

        *Counsel for Defendant General Information Services, Inc*

9349292v.1