## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMARA T. KING, on behalf of herself and all others similarly situated, <br><br>      Plaintiff, <br><br>            v. <br><br> GENERAL INFORMATION SERVICES, INC., <br><br>      Defendant. | Case No.:  2:10-cv-06850-PBT |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Cindy D. Hanson (admitted *pro hac vice*)          Robert E. Campbell
John P. Jett (admitted *pro hac vice*)

KILPATRICK TOWNSEND &                         WHITE & WILLIAMS, LLP
    STOCKTON, LLP                             LibertyView, Suite 400
1100 Peachtree Street, Suite 2800             457 Haddonfield Rd.
Atlanta, GA 30309                             Cherry Hill, NJ 08002-2220
Telephone: (404) 815-6500                     Telephone: (856) 317-3600
Facsimile: (404) 815-6555                     Facsimile: (856) 317-1342

*Counsel for Defendant General Information Services, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ................................................................................2

ARGUMENT AND CITATION TO AUTHORITY ............................................4

I.     Plaintiff Cannot Satisfy the Requirements of Rule 23(a). ....................5

       A.     Plaintiff's Proposed Class is Not Ascertainable. ......................5

              1.     Plaintiff's Proposed Class and Ascertainability Solution Are
                     Precluded by Recent Controlling Third Circuit Authority. ....................7

              2.     Plaintiff's Proposed Questionnaire Violates GIS's Due Process
                     Rights. ...................................................................9

       B.     Plaintiff is Not an Adequate Class Representative Under Rule 23(a)(4)..............10

              1.     Plaintiff is Inadequate Because She Has Split Her Claim. .......................10

                     i.     Plaintiff Has Split Her Claim by Seeking Only Statutory
                            Damages and Pursuing Only a Single Class Claim. .....................12

                     ii.    Opt-Out Does Not Remedy Plaintiff's Claim Splitting. ...............16

              2.     Plaintiff is Inadequate Because She is Subject to Unique Defenses. .........16

II.    The Proposed Class is Not Certifiable Under Rule 23(b)(3). ...........................17

       A.     Questions of Law or Fact Affecting Only Individual Members
              Predominate over Questions Common to Class Members. ..................................18

              1.     Individual Questions of Salary Predominate over Common
                     Questions....................................................................18

              2.     Individual Questions of Willfulness Predominate over Common
                     Questions....................................................................19

              3.     Individual Questions of What Constitutes "Adverse Information"
                     Predominate over Common Questions. ....................................20

       B.     A Class Action is Not Superior to Other Available Methods for Fairly and
              Efficiently Adjudicating the Controversy. ...........................................21

              1.     A Class Action is Inferior Because Class Members Can Pursue
                     Viable Individual Claims. ............................................21

2.      Alternatively, a Class Action is Inferior Because it Subjects GIS to Substantial Liability Disproportionate to the Alleged Harms....................23

3.      A Class Action is Inferior Because Aggregate Treatment of Plaintiff's Proposed Class is not Manageable............................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................... 17, 18

*Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ........................................... 15

*Bach v. First Union Nat'l Bank*, 149 F. App'x 354 (6th Cir. 2005) .......................................... 15

*Barabin v. Aramark Corp.*, 210 F.R.D. 152 (E.D. Pa. 2002) ...................................................... 18

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ............................................................ 18

*Bayshore Ford Truck v. Ford Motor Co.*,
    No. 99-741 (JLL), 2010 WL 415329 (D.N.J. Jan. 29, 2010) ...................................................... 4

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) ................................................................... 16

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ........................................................... 10

*Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851 (W.D. Ky. 2003) ................................... 15

*Bradburn Parent/Teacher Store, Inc. v. 3M (Minn. Mining & Mfg. Co.)*,
    No. 02-7676, 2004 WL 414047 (E.D. Pa. Mar. 1, 2004) .......................................................... 11

*Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654 (N.D. Ala. 2002). ......................................... 14

*Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478 (N.D. Ga. 2006) .................................................. 14

*Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) ..................... 13

*Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000) .......................................................................... 6

*Cicilline v. Jewel Food Stores, Inc.,* 542 F. Supp. 2d 831 (N.D. Ill. 2008) ................................. 14

*Clavell v. Midland Funding LLC*, No. 10-3593, 2011 WL 2462046 (E.D. Pa. June 21,
    2011) .......................................................................................................................................... 8

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ............................................................... 4, 18

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) .......................................................... 14

*Coyle v. Hornell Brewing Co.*,
    No. 08-2797 (JBS/JS), 2011 WL 3859731  (D.N.J. Aug. 30, 2011) ......................................... 16

*Dietz v. Comcast Corp.*,
    No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ...................................... 8

*Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982) .......................... 12

*Franco v. Conn. Gen. Life Ins. Co.*,
    No. 07-cv-6039 (SRC) (PS), 2013 WL 177943 (D.N.J. Jan. 16, 2013) .................................... 7

*Gardner v. Equifax Information Services, LLC*,
    No. 06-3102 ADM/AJB, 2007 WL 2261688 (D. Minn. Aug. 6, 2007) ...................... 12, 16, 20

*Haggart v. Endogastric Solutions, Inc.*,
    No. 10-346, 2012 WL 2513494 (W.D. Pa. June 28, 2012) .................................................. 5, 6

*Harper v. Trans Union LLC*,
    No. 04-3510, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)...............................................*passim*

*Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006) ................................ 24

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)...............................*passim*

*In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24 (2d Cir. 2006)....................................... 18

*In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002)............................................... 12

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    No. C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008)........................................... 8

*Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3d Cir. 2001) .................................................. 21, 24

*Kirkpatrick v. Equifax Info. Servs., LLC*,
    No. 02-1197MO, 2005 WL 1231485 (D. Ore. May 23, 2005)................................................ 15

*Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261 (E.D. Pa. 2000)......................................................... 6

*Klotz v. Trans Union, LLC*, 246 F.R.D. 208 (E.D. Pa. 2007) ..................................................... 22

*LaRocque v. TRS Recovery Servs., Inc.*, 285 F.R.D. 139 (D. Me. 2012).................................... 22

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) ............................................ 24

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012) .........................................................................................*passim*

*Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) .................................................................. 9

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) ............................................. 14

*Nafar v. Hollywood Tanning Sys., Inc.*,339 F. App'x 216 (3d Cir. 2009).................................... 11

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ...................................................................................... 18, 23, 24

iv

*Obabueki v. International Business Machines Corp.*,
  145 F. Supp. 2d 371 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003) ............................... 14

*Pearl v. Allied Corp.*, 102 F.R.D. 921 (E.D. Pa. 1984) ............................................................... 11

*Sadler v. Midland Credit Mgmt., Inc.*,
  No. 06 C 5045, 2008 WL 2692274 (N.D. Ill. July 3, 2008) ........................................................ 8

*Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007) ................................................................ 19

*Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) ........................ 23

*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007) .............................................. 15

*Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (N.Y. App. Div. 1998) ............................... 16

*Soutter v. Equifax Info. Servs., LLC*,
  No. 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012) ......................................................... 19

*Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387 (S.D. Ohio 2008) ................................... 6

*Stillmock v. Weis Markets, Inc.*,
  385 F. App'x 267 (4th Cir. 2010) ............................................................................................. 19

*Summerfield v. Equifax Information Services LLC*,
  264 F.R.D. 133 (D.N.J. 2009) ............................................................................................ 13, 22

*Thompson v. Am. Tobacco Co.*,
  189 F.R.D. 544 (D. Minn. 1999) .............................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................................. 4, 9

*Xavier v. Philip Morris USA, Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................................................................... 7, 9

*Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*,
  811 F.2d 1368 (10th Cir. 1987) ................................................................................................ 15

## <u>Statutes and Rules</u>

15 U.S.C. § 1681c ......................................................................................................... *passim*

15 U.S.C. § 1681k .............................................................................................................. 15

15 U.S.C. § 1681n ................................................................................................... 3, 19, 22

15 U.S.C. § 1681o .............................................................................................................. 12

28 U.S.C. § 2072(b) .................................................................................................... 10

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## INTRODUCTION

Plaintiff asks this Court to certify a class that is directly contravened by recent Third Circuit authority.  Barely six months ago in *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012), the court reversed the district court and decertified an unascertainable class. Plaintiff's class fails for the same reason.  As Plaintiff concedes, her claim – and that of *every other class member* – is predicated upon a finding that the job they sought had a salary of less than $75,000.  And, as Plaintiff further acknowledges, this determination cannot be made from GIS's files.  Plaintiff's solution to this fatal problem is, simply, to ask the class members whether they should be included in the class.  The Third Circuit in *Marcus* found this to be an unacceptable compromise.  *Id.* at 594.  Further, Plaintiff's ask-the-class mentality violates GIS's due process rights and runs afoul of the Rules Enabling Act.

Further flaws undermine Plaintiff's motion.  First, Plaintiff is an inadequate class representative.  More interested in achieving class certification than ensuring complete relief for the class members, Plaintiff has abandoned avenues for potential class recovery.  Plaintiff has chosen to pursue *only* statutory damages on a *single* claim and thereby forego actual damages and other causes of action that may be available to the proposed class members.  Plaintiff has elevated her interests above those of the class and risks a *res judicata* bar to complete recovery by class members.  Such gamesmanship makes Plaintiff inappropriate as a class representative.

Second, individual issues will predominate.  It will only be possible to establish GIS's liability after evaluating, ***for each and every report at issue***, whether the report was prepared for a job paying more than $75,000 and whether the report's non-conviction information was actually adverse to the individual.  These issues are not (and cannot be) amenable to common sources of proof.  The proof as to the Plaintiff says nothing as to the rest of the class.

Third, class treatment is inferior.  Individual Fair Credit Reporting Act ("FCRA") cases can and do result in significant awards.  This is not a case where individual relief is so modest as to make individual claims untenable.  Alternatively, if the Court finds that this case cannot support actual damages, it should deny certification because the class mechanism – with its threat of disproportionate liability – will be used to force GIS to abandon its meritorious defenses, including its constitutionally guaranteed right to free speech.

Last, the fact that some FCRA class actions have been certified says nothing about whether *this* FCRA class action is suitable for class certification.  The Third Circuit has rejected the notion that any class of cases is presumptively certifiable.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321-22 (3d Cir. 2008).  Moreover, the case authority on which Plaintiff relies is universally in the context of technical and de minimis FCRA violations that never result in individual claims for actual damages.  By contrast, Plaintiff's claim here, relating to the substance of employment-purpose consumer reports, can and does support meaningful claims for actual damages.  Put simply, class treatment is neither necessary nor warranted here.

## **FACTUAL BACKGROUND**

Plaintiff alleges that GIS violated the Fair Credit Reporting Act § 1681c, which prohibits a consumer reporting agency ("CRA") from reporting adverse items of information that predate the report by more than seven years.  *See* 15 U.S.C. § 1681c(a); Class Br. at 5; Amended Complaint ("Compl.") (Dkt. 14), ¶¶ 39-45, 47.  Importantly, the prohibition on reporting adverse information older than seven years contains two exceptions:  first, the prohibition does not apply to "records of convictions of crimes," 15 U.S.C. § 1681c(a)(5); and second, the prohibition does not apply in situations where a job applicant seeks a position with an annual salary that "equals, or which may reasonably be expected to equal $75,000, or more."  *Id.* § 1681c(b)(3).

2

Plaintiff's claims arise from records associated with a single criminal case. In 2000, Plaintiff was charged with eleven criminal counts following a traffic stop. Deposition of Shamara T. King ("King Dep."), at 24:18-26:4, attached hereto as **Exhibit 1**. Plaintiff pled guilty to one count of criminal conspiracy and the remaining ten counts were *nolle prossed – i.e.*, they were not prosecuted. King Dep. 26:9-25.

In February 2010, Plaintiff applied for a position with the United States Postal Service ("USPS"), which purchased a criminal background report regarding Plaintiff from GIS. King Dep. 33:14-17; Deposition of Lori Webb, at 91:24-92:5, 149:19-22, attached hereto as **Exhibit 2.** In light of § 1681c's exception for "records of convictions," GIS reported Plaintiff's complete records of conviction, including her *nolle prossed* counts. Plaintiff now seeks to represent a class on the basis of reporting that was complete and accurate.

Plaintiff seeks only to recover statutory damages, punitive damages, and attorneys' fees, under § 1681n. Compl., Prayer for Relief. Although Plaintiff suggests that she did not obtain employment at the USPS because of the presence of the *nolle prossed* counts, she does not seek actual damages. As detailed in GIS's motion for summary judgment (filed contemporaneously herewith), Plaintiff has no actual damages – the USPS denied her application for employment because of her conviction, not the *nolle prossed* counts.

Plaintiff seeks only to certify a class under § 1681c,[1] defining a nationwide class of persons who were the subject of a GIS report that included "any non-conviction criminal record which antedated the report by more than seven (7) years and which [GIS] sold to an employer in connection with the person's job application paying an annual salary of less than $75,000." Class Br. at 5. The Court should deny Plaintiff's motion.

---

[1] Although Plaintiff pled a class for alleged violations of FCRA § 1681k, Compl. ¶ 38, she has not moved for class certification on that claim.

## ARGUMENT AND CITATION TO AUTHORITY

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quotation marks omitted).  To justify a departure from this rule, Plaintiff bears the burden of proving, through a preponderance of the evidence, that the proposed class satisfies every element of Fed. R. Civ. P. 23.  *Hydrogen Peroxide*, 552 F.3d at 316.  "[A]ctual, not presumed[,] conformance with Rule 23 requirements is essential."  *Marcus*, 687 F.3d at 591 (first alteration added; quotation marks omitted); *Hydrogen Peroxide*, 552 F.3d at 310 ("[A] class may not be certified without a finding that each Rule 23 requirement is met.").  The "Third Circuit has made clear, if there is any doubt as to whether the Rule 23 requirements have been met, class certification is not appropriate." *Bayshore Ford Truck v. Ford Motor Co.*, No. 99-741 (JLL), 2010 WL 415329, at *7 (D.N.J. Jan. 29, 2010).

Determining actual conformity with Rule 23 requires the Court to conduct a rigorous analysis.  *See Hydrogen Peroxide*, 552 F.3d at 309.  Class certification is "proper ***only if*** the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)  have been satisfied." *Dukes*, 131 S. Ct. at 2551 (emphasis added; quotation marks omitted).  To that end, the Third Circuit has stated that a "class certification decision requires a thorough examination of the factual and legal allegations." *Hydrogen Peroxide*, 552 F.3d at 309.

The Supreme Court has repeatedly "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . .  Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotation marks and citations omitted).  Moreover, in evaluating Rule 23, the Court is not to take the Complaint's factual allegations as true. *Hydrogen Peroxide*, 552 F.3d at 316 n.15 ("The proposition that a district

4

judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it[.]").

Determining whether to certify a class is a two-step analysis.  First, a court must analyze whether a plaintiff has established that a class satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy, together with the unenumerated requirement that the class be ascertainable.  Second, if Rule 23(a) is satisfied, a court must analyze whether a plaintiff has established that the class satisfies one or more of the categories of class actions allowed under Rule 23(b).  *See* Fed. R. Civ. P. 23.  Plaintiff's proposed class fails to satisfy either Rule 23(a) or Rule 23(b)(3).

## I.      Plaintiff Cannot Satisfy the Requirements of Rule 23(a).

Rule 23(a) provides that class certification is appropriate only where:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, a class must be "ascertainable," – it must be possible to presently determine class membership.  Plaintiff cannot meet these requirements.[2]

### A.      Plaintiff's Proposed Class is Not Ascertainable.

"[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592-93; *see also Haggart v. Endogastric Solutions, Inc.*, No. 10-346, 2012 WL 2513494, at *2 (W.D. Pa. June 28, 2012) ("A threshold requirement to a Rule 23 action is the actual existence of a class which is sufficiently definite and identifiable."); *Kline v. Sec.*

---

[2] While Plaintiff does not – and cannot – know the precise number of class members, GIS does not challenge numerosity, commonality, or typicality.

*Guards, Inc.*, 196 F.R.D. 261, 266 (E.D. Pa. 2000) (denying certification where the plaintiff failed to "defin[e] the class in a way that enable[d] the court to determine whether a particular individual is a class member").  Ascertainability is a distinct inquiry from the enumerated requirements of Rule 23.  *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 n.8 (E.D. Pa. 2000).

To be ascertainable, a "proposed class must be sufficiently identifiable and it must be administratively feasible to determine whether a given individual is a member of the class."  *Haggart*, 2012 WL 2513494, at *3 (quotation marks omitted); *Kline*, 196 F.R.D. at 266 (same).  "The touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or ***call for individualized assessments to determine class membership***."  *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008) (emphasis added).

Section 1681c only attaches liability where the report-in-question was prepared for a job paying less than $75,000 per year.  15 U.S.C. § 1681c(b)(3).  Plaintiff recognizes the necessity of this inquiry by including in her class definition only persons who applied for "a position paying an annual salary of less than $75,000."  Class Br. at 5.

There is no way to determine which reports GIS prepared for a position paying more than $75,000 without individual hearings for each class member.  GIS does not collect salary data and it is impossible to determine from GIS's files which reports are subject to this defense.  Declaration of Lori Webb ("Webb Decl."), ¶¶ 5-7, attached hereto as **Exhibit 3**.[3]  That is, even if the Court certifies Plaintiff's class, there is no way to determine who has an actual claim under § 1681c without an individualized inquiry into that person's job prospects.

---

[3] GIS nonetheless knows that it prepares reports each year for jobs paying more than $75,000, meaning that the § 1681c(b)(3) application is a relevant defense.  *See* Webb Decl. ¶ 4.

In this regard, Plaintiff has set forth no evidence or arguments to satisfy her burden of proving that she can determine membership in the class. *See Franco v. Conn. Gen. Life Ins. Co.*, No. 07-cv-6039 (SRC) (PS), 2013 WL 177943, at *6 (D.N.J. Jan. 16, 2013) ("In moving for class certification, the plaintiff has the burden of proving by a preponderance of the evidence that all requirements of Rule 23 are met.").  To the contrary, Plaintiff, recognizing that she has no way to ascertain the class members, offers – in a single sentence discussing numerosity – a purported solution:  any problems determining who applied for a position paying more than $75,000 can be solved with a "simple question about the job's salary in a notice to the 28,330 identified [*sic*] by [GIS] . . . ."[4]  Class Br. at 15.  In other words, Plaintiff proposes to give notice to a group of potentially tens of thousands of persons who she *suspects* may be members of the class and then let those individuals elect to respond as to whether or not they belong in the class.

### 1. Plaintiff's Proposed Class and Ascertainability Solution Are Precluded by Recent Controlling Third Circuit Authority.

Barely six months ago, the Third Circuit reversed a district court's certification order on a class that proposed ***precisely the same type of ask-the-class methodology that Plaintiff now asks this Court to sanction***.  In *Marcus*, 687 F.3d at 591, the district court certified a class based on alleged defects in run-flat tires installed on new BMW vehicles.  The class was defined as those persons who had experienced a flat tire in a BMW equipped with Bridgestone run-flat tires. The Court of Appeals reversed, holding that the proposed class was not ascertainable.

---

[4] Plaintiff also devotes a portion of her numerosity briefing to a discussion of statistics about median salary ranges in the U.S.  *See* Class Br. at 15.  This data is irrelevant.  First, it does not help the court ascertain the actual members of the class.  Second, it does not matter whether the number is large or small – the operative fact is that it is *unknown* and *unknowable*.  Third and finally, courts have expressly rejected these types of guessing game tactics when faced with ascertainability challenges.  *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (rejecting attempts to use "broad demographic data" to show who is in the class because such data is not directly "helpful for determining which individual[s]" are in the class).

The dispositive failures of the class in *Marcus* are identical to the problems inherent in Plaintiff's proposed class here.  First, the Third Circuit held that the class was not ascertainable because nothing in BMW's databases could identify consumers whose cars had the correct brand of tires and who suffered a flat tire:  "[W]here nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails."  *Id.* at 593.  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' ***then a class action is inappropriate***."  *Id.* (emphasis added).

District courts in this Circuit – and nationwide – have reached the same conclusion.  For example, in *Clavell v. Midland Funding LLC*, No. 10-3593, 2011 WL 2462046, at *1 (E.D. Pa. June 21, 2011), the district court refused to certify a consumer class action alleging that a debt collector routinely attempted to collect time-barred debts.  The court found it dispositive that there was no way to ascertain the class because the debt collector's records could only provide an *estimate* of class members and the court could not determine *actual* membership without individualized inquiry.  *Id.* at *4; *see also, e.g.*, *Sadler v. Midland Credit Mgmt., Inc.*, No. 06 C 5045, 2008 WL 2692274, at *5 (N.D. Ill. July 3, 2008) ("Moreover, certain information necessary to determine whether an individual is part of the class is not in [defendant's] files at all."); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749, at *8 (N.D. Cal. Feb. 13, 2008) (accord); *Dietz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007) (accord).  As noted above, there is no information in GIS's files from which to figure out who actually belongs in the class.[5]

---

[5] Moreover, Plaintiff must present a certifiable class at the time of certification, not a promise to fashion a certifiable class in the future.  "A party's assurance to the court that it intends or plans to meet the requirements [for class certification] is insufficient."  *Hydrogen Peroxide*, 552 F.3d at 318; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) ("[W]here the court finds, on the basis of substantial evidence as here, that there are

Second, in *Marcus* the Third Circuit rejected the exact type of remedy that Plaintiff suggests here:

> ***We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so.***  For example, simply having potential class members submit affidavits that their Bridgestone RFTs have gone flat and been replaced may not be "proper or just."

*Marcus*, 687 F.3d at 594 (emphasis added).  Stated another way, the Third Circuit has instructed the Court not to certify a class where members are to be ascertained through their own say so.[6]

### 2.    Plaintiff's Proposed Questionnaire Violates GIS's Due Process Rights.

Plaintiff's solution also fails as a matter of law because it deprives GIS of its right to present substantive defenses to the claims brought against it.  Section 1681c(b)(3) offers GIS a complete defense to any claim brought by any potential class member.  Plaintiff's solution, which relies on class members to simply declare that they are not subject to that defense – in essence, to self-determine GIS's liability – denies GIS its right to due process and has been rejected by the Third Circuit on that ground.  *Marcus*, 687 F.3d at 594 ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have ***serious due process implications.***").

---

serious problems *now appearing*, it should not certify a class ***merely on the assurance of counsel that some solution will be found.***") (second emphasis added).  Plaintiff has failed to meet her burden because she has suggested that the Court certify a defective class that she hopes, as an afterthought, to remedy in the future.

[6] Other courts have likewise rejected attempts to solve ascertainability issues by allowing the class members to simply assert their inclusion in the class.  For example, in *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011), the court found that because "no defendant records on point [could] identify class members," the class was unascertainable.  The plaintiffs suggested, among other things, inviting potential class members to submit affidavits attesting that they satisfied the criteria in the class definition.  The court denied certification because allowing class members to simply stipulate to their own inclusion in the class, without any ability to verify or challenge that assertion, does not satisfy Rule 23.  *Id.* at 1090; *see also Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (finding that a class was unascertainable and stating that "[t]he court disavows any reliance on self-identification").

The Supreme Court has similarly forbidden using the class mechanism in a manner that denies a defendant the right to assert substantive defenses to individual class members' claims. *See Dukes*, 131 S. Ct. at 2561 (criticizing the suggestion that a single mechanism could supplant the defendant's right to raise individual defenses and holding that "a class cannot be certified on the premise that [a defendant] will not be entitled to litigate its statutory defenses to individual claims"). To apply Rule 23 otherwise would violate the Rules Enabling Act, which prohibits interpreting Federal Rules of Civil Procedure to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Plaintiff's proposal of a hybrid notice/questionnaire runs counter to both statutory law and controlling precedent by asking GIS to sacrifice its right to raise a *defense conferred by statute*, to each claim, on the basis of an informal assurance from each potential class member that they are actually a member of the class and not subject to GIS's defense.

**B.     Plaintiff is Not an Adequate Class Representative Under Rule 23(a)(4).**

**1.     Plaintiff is Inadequate Because She Has Split Her Claim.**

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "guarantees 'that the representatives and their attorneys[7] will competently, reasonably, and vigorously prosecute the suit and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be a divergence in viewpoint or goals in the conduct of the suit." *Harper v. Trans Union LLC*, No. 04-3510, 2006 WL 3762035, at *6 (E.D. Pa. Dec. 20, 2006) (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977)). Here, Plaintiff will not fairly and adequately protect the interests of putative class members because she has split her

---

[7] GIS does not dispute that Plaintiff's counsel is qualified to serve as class counsel.

claim – choosing only to pursue statutory damages and a subset of the claims pled in her

Complaint – in an attempt to secure class certification at the expense of class members' rights.[8]

The Third Circuit has directed district courts to consider claim splitting when evaluating

adequacy.  In *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009), the

Court of Appeals vacated a certification order where the class representative sought certification

on only certain classes of damages and the district court failed to consider whether that made the

representative inadequate.  "By seeking only partial relief, [the class representative] may be

engaging in claim splitting, which is generally prohibited by the doctrine of *res judicata*."  *Id.*

(collecting cases).  The Court of Appeals admonished the district court for "fail[ing] to consider

this very important issue in assessing the adequacy of representation requirement."  *Id.* at 225.

Courts in this District have concluded that class certification is inappropriate where a

representative jettisons portions of the case to facilitate class certification.  In *Pearl v. Allied

Corp.*, 102 F.R.D. 921 (E.D. Pa. 1984), the class representatives abandoned various damages

claims in an attempt to avoid the individualized inquiry necessitated by those claims.  The court

denied class certification, stating that "the plaintiffs' efforts to certify a class by abandoning

some of the claims of their fellow class members have rendered them inadequate class

representatives."  *Id.* at 923.  The court found that "plaintiffs [could not] properly serve as class

representatives" where class members would be barred from litigating their remaining claims by

the doctrine of *res judicata*.  *Id.* at 924; *see also Bradburn Parent/Teacher Store, Inc. v. 3M

(Minn. Mining & Mfg. Co.)*, No. 02-7676, 2004 WL 414047, at *9 (E.D. Pa. Mar. 1, 2004)

---

[8] Plaintiff even highlights her abandonment of any claim to actual damages as a reason why class certification is presumptively warranted.  *See, e.g.*, Class Br. at 4-5.

(denying class certification where the plaintiff attempted to pursue only limited and selective measures of damages at the expense of class members' alternatives).[9]

Claim splitting precludes class members from litigating the issues that the representative has strategically jettisoned in hopes of securing class certification.  That is, it subjects class members to a binding judgment and the doctrine of *res judicata* bars them from litigating any other claims arising from the same transaction.  *See In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 339 (S.D.N.Y. 2002) ("Claim-splitting is generally prohibited by the doctrine of res judicata, which bars parties to a prior action or those in privity with them from raising in a subsequent proceeding any claim they *could* have raised in the prior one . . . .") (citation omitted); *Thompson*, 189 F.R.D. at 551 ("[R]epresentatives who tailored the class claims in an effort to improve the possibility of demonstrating commonality obtained this essentially cosmetic benefit only by presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action.").

### i.     Plaintiff Has Split Her Claim by Seeking Only Statutory Damages and Pursuing Only a Single Class Claim.

Plaintiff's claim splitting has imperiled the rights of the class members in two ways. First, Plaintiff has chosen not to pursue actual damages, even though such relief is available under the FCRA.  *See* 15 U.S.C. § 1681o(a)(1).  Plaintiff's decision not to pursue actual damages limits the proposed class members to *only* statutory damages, constraining their potential

---

[9] Courts outside of the Third Circuit have also denied class certification where a class representative opts to abandon claims on a class-wide basis to the detriment of class members. *See, e.g.*, *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550 (D. Minn. 1999) ("If the named Plaintiffs have in fact jeopardized the class members' potential claims for [various] damages, they would be deemed to have interests 'antagonistic' to those of the class."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (rejecting certification where plaintiffs had "so tailored the class claims in an effort to improve the possibility of demonstrating" compliance with Rule 23 at the "price of presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action").

recovery and subjecting them to the willfulness standard, which is much higher than the negligence standard required to obtain actual damages (and which, as GIS's motion for summary judgment shows, will not be met). *Gardner v. Equifax Information Services, LLC*, No. 06-3102 ADM/AJB, 2007 WL 2261688 (D. Minn. Aug. 6, 2007), is instructive on this issue. In *Gardner*, the court denied class certification finding plaintiffs inadequate because of their election to abandon actual damages and constrain the class members to solely statutory damages. *Id.* at *5.

There is no apparent basis for Plaintiff's decision other than attempting to lower the hurdle to class certification. It is a red herring to suggest that FCRA awards are so small that plaintiffs can never feasibly bring individual suits and recover actual damages. Plaintiff cites a string of cases for the proposition that courts routinely certify statutory damage FCRA class actions.[10] *See* Class Br. at 4-5 & n.3. These cases are inapplicable to the present dispute. The cases that Plaintiff cites on this point concerned technical disclosure-type FCRA violations – the type of violations that, by their very nature, do not produce actual damages. That is, they are the types of violations that, although technically covered by the FCRA, do not cause actual loss to consumers. For example, both *Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) and *Summerfield v. Equifax Information Services LLC*, 264 F.R.D. 133, 143 (D.N.J. 2009), alleged that Equifax had represented to consumers that Equifax had searched public records to investigate inaccuracies when, in reality, it had contracted the search to a third party. Such claims, based more on form than substance, do not invite actual damages and may, in fact, warrant statutory damage class actions. Indeed, the *Summerfield* court held *not* that

---

[10] The Third Circuit has discredited Plaintiff's logic, stating that the fact of numerous certifications in any area of the law does not raise any presumption that class treatment is warranted. *See Hydrogen Peroxide*, 552 F.3d at 322 ("[I]t does not follow that a court should relax its certification analysis, or presume a requirement for certification is met, merely because a plaintiff's claims fall within" a frequently certifiable type of class).

13

statutory damage class actions are presumptively certifiable but that "*give[n] the nature of [P]laintiff's claims*, this is not a case in which the amount of the damage award is likely to differ from consumer to consumer . . . ." *Summerfield*, 264 F.R.D. at 143 (emphasis added; alterations in original). Each of Plaintiff's remaining cases is inapposite – each concerned an FCRA violation that, by its very nature, did not raise the specter of actual damages.[11]

By contrast, Plaintiff's dispute here concerns an alleged *substantive issue* on *employment-purpose* consumer reports. That is, she alleges not that GIS made a technical violation of its disclosure obligations, or that it misled consumers with a vague mailing, but rather that it improperly included allegedly adverse information in a consumer report – information that subsequently *cost people employment opportunities*. Such substantive violations on employment-purpose reports can – and do – support claims for substantial actual damages with significant variation between class members. For example, in *Obabueki v. International Business Machines Corp.*, 145 F. Supp. 2d 371, 371-78 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003), the plaintiff brought an individual FCRA claim alleging that he had lost a job opportunity because of a mistake on his credit report and ultimately secured an individual judgment of $450,000. *Obabueki*, No. 99-cv-11262 (S.D.N.Y. Jan. 29, 2002) (Dkt. No. 109)

---

[11] *LaRocque* concerned only certification under the FDCPA, not on the FCRA claims, and on allegations of improper debt collection practices that resulted in no out-of-pocket damages. *See* 285 F.R.D. 139 (D. Me. 2012). *Murray* concerned improper notice on unsolicited offers of credit – a claim in which no class member had lost money but instead where the creditor had made a technical FCRA violation. *See* 434 F.3d 948 (7th Cir. 2006). *Cicilline* alleged that a retailer had improperly printed credit card expiration dates on receipts, which had not resulted in losses to the class. *See* 542 F. Supp. 2d 831 (N.D. Ill. 2008). *Campos* concerned whether a CRA had made proper file disclosures upon request (not errors on the report that affected a consumer's ability to seek employment). *See* 237 F.R.D. 478 (N.D. Ga. 2006). *Bonner* alleged that creditors had used "vague" language in sending out offers of credit – again, no direct loss. *See* 2006 WL 1518974 (N.D. Ind. May 25, 2006). Finally, *Braxton* was a case about insurers not complying with the FCRA's notice requirements when raising insurance premiums, leading to minimal damages. *See* 209 F.R.D. 654 (N.D. Ala. 2002).

(Judgment).  Likewise, in *Cortez v. Trans Union, LLC*, 617 F.3d 688, 705-06 (3d Cir. 2010), the plaintiff brought an individual FCRA claim to trial and recovered $150,000 (after the district court reduced the jury's $750,000 award); the Third Circuit affirmed the award.

These cases are far from outliers.  *See, e.g.*, *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007) ($256,000 in actual damages); *Bach v. First Union Nat'l Bank*, 149 F. App'x 354 (6th Cir. 2005) ($400,000 in compensatory damages); *Kirkpatrick v. Equifax Info. Servs., LLC*, No. 02-1197MO, 2005 WL 1231485, at *1 (D. Ore. May 23, 2005) ($210,000 in actual damages and $195,000 in attorneys' fees); *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851 (W.D. Ky. 2003) ($100,000 in actual damages and $250,000 in punitive damages); *Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368 (10th Cir. 1987) ($61,500 in actual damages); *Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($50,000 in actual damages, reduced from jury verdict of $5.5 million).  In sum, Plaintiff's argument that certification of statutory damages FCRA class action is either routine or necessary is belied both by the fact that her case law is all distinguishable and by the fact that plaintiffs can and do recover substantial damages in individual suits alleging substantive violations of the FCRA.

Second, Plaintiff has split her claim by seeking certification of only her FCRA § 1681c claim.  Plaintiff's Complaint includes a claim for allegedly violating FCRA § 1681k, *see* Compl. ¶ 47, which she has chosen not to pursue for class certification.  As a result of this decision, any class members with any other FCRA claims would be precluded from pursuing them as a result of a class judgment on Plaintiff's § 1681c claim.  This splitting means that if class members have an inaccuracy on their report that is different from the alleged reporting of outdated adverse information (*i.e.*, any inaccuracy), Plaintiff's claim splitting sacrifices the ability to ever pursue recovery on that inaccuracy.  As such, Plaintiff is not an adequate class representative.

### ii.      Opt-Out Does Not Remedy Plaintiff's Claim Splitting.

Plaintiff's only redress for her claim splitting is to suggest that the opt-out mechanism in Rule 23(c)(2)(B) allows class members to protect their own rights.  "The ability to opt out of the class is insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the [class] representatives."  *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 601-02 (N.Y. App. Div. 1998).  Plaintiff's position reverses Rule 23's logic:  rather than presuming that she is an adequate class representative, she posits that she should be allowed to sever the rights of class members and obligate *them* to opt-out.

The *Gardner* court considered and rejected just such a proposal.  Like here, the plaintiffs in *Gardner* suggested that the opt-out mechanism could protect class members from their choice to split claims.  The district court disagreed, rejecting the plaintiffs' attempt to "place a burden on members of the potential class to opt-out if they wish to retain their legal claim for actual damages."  *Gardner*, 2007 WL 2261688, at *5.

> [O]pt-out is not a sufficient cure for the inadequacy of representation in this case. . . . . **The opt-out mechanism is not meant to ensure lack of conflict within the class by forcing a large number of individuals to affirmatively retain their legal rights or lose their claims.  If this were the case, any person would be an adequate representative of a proposed class so long as there was an opt-out procedure,** and there would be no need for an adequacy requirement.

*Id.* at *5-6 (emphasis added; citations omitted).  The Court here should similarly reject Plaintiff's attempt to shift her burden of being an adequate class representative onto the class members.

### 2.      Plaintiff is Inadequate Because She is Subject to Unique Defenses.

Unique defenses against a class representative bear on the representative's adequacy.  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (collecting appellate decisions for the proposition that "unique defenses bear on both the typicality and adequacy of the class representative").  "Other courts of appeals emphasize, as do we, the challenge presented by a

16

defense unique to a class representative-the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Id.* at 297; *see also Coyle v. Hornell Brewing Co.*, No. 08-2797 (JBS/JS), 2011 WL 3859731, at *3-4 (D.N.J. Aug. 30, 2011) (plaintiff was inadequate because she was subject to unique defenses that could become the focus of the litigation).

Here, GIS's defenses to Plaintiff's claim render her an inadequate class representative. The information that GIS reported about Plaintiff was not *adverse* because it had no bearing on her employment application. *See* Declaration of Linda M. Madden, attached hereto as **Exhibit 4**. Specifically, the USPS denied Plaintiff's employment application not on the basis of the *nolle prossed* counts on her report, but instead on the basis of her felony conviction. *See id.* ¶ 5. The presence of *nolle prossed* counts on Plaintiff's background report "***had no impact on USPS's decision to deny Ms. King's February 21, 2010 application for employment.***" *Id.* ¶ 8 (emphasis added). In other words, the reported items of information were not *adverse* – at worst, they were neutral and irrelevant. As such, Plaintiff lacks the essential elements of her claim under § 1681c, which only prohibits reporting outdated "adverse" items of information. *See* 15 U.S.C. § 1681c(a)(5). This defense, which is a significant part of GIS's litigation strategy, renders Plaintiff an inadequate class representative.

## II.     The Proposed Class is Not Certifiable Under Rule 23(b)(3).

Plaintiff seeks to certify a class under only Rule 23(b)(3), Class Br. at 21, which allows a case to proceed as a class action where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

17

**A.      Questions of Law or Fact Affecting Only Individual Members Predominate over Questions Common to Class Members.**

The predominance requirement, although similar to Rule 23(a)'s commonality inquiry, is a "far more demanding" standard. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *Comcast*, 2013 WL 1222646, at *4 (same).  Predominance "require[es] more than a common claim." *Newton*, 259 F.3d at 187.  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In particular, predominance tests whether "proof of the essential elements of the cause of action requires individual treatment," in which case "class certification is unsuitable." *Newton*, 259 F.3d at 172. Plaintiff's class fails to satisfy the predominance requirement for three reasons.

**1.      Individual Questions of Salary Predominate over Common Questions.**

Because Plaintiff cannot ascertain her class without an individual assessment of which reports GIS prepared for jobs paying more than $75,000, individual questions predominate.  The Third Circuit has recognized that problems with ascertainability necessarily generate problems with predominance.  *Marcus*, 687 F.3d at 594 n.3 ("The class definition and ascertainability problems spill into the predominance inquiry as well."); *see also In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006) ("[W]e point out the need for numerous individualized determinations of class membership in order to provide further support for our basic conclusion that individual questions will permeate this litigation.  Although ascertainability of the class is an issue distinct from the predominance requirement for a (b)(3) class, the problems we have identified on this topic further indicate the obstacles to [class certification].").

This consideration of individual defenses for each class member defeats predominance. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146-48 (3d Cir. 1998) (holding that evaluation of defenses raised individual questions that precluded certification).  As discussed in detail above,

18

the FCRA provides a substantive defense to any § 1681c claim based on salary.  *See* 15 U.S.C. § 1681c(b)(3).  Evaluating the applicability of § 1681c(b)(3)'s immunity defense in this case, which GIS has for *every consumer report at issue in the class*, is an individualized undertaking. *See Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D. Pa. 2002) (holding that the need for individualized evaluations of damages and defenses meant that individual issues predominated), *aff'd*, No. 02-8057, 2003 WL 355417, at *1 (3d Cir. Jan. 24, 2003).  There is simply no way, using common sources of proof, to evaluate the applicability of GIS's defense as to each class member.  Proving that any single report is or is not subject to the $75,000 exception does nothing to advance that defense as to the class.  As such, individual questions predominate.

### 2.      Individual Questions of Willfulness Predominate over Common Questions.

Plaintiff seeks statutory damages, which are available only for willful violations of the FCRA.  *See* 15 U.S.C. § 1681n.  For a CRA's actions to be willful, there must have been "a known or obvious risk that was so great as to make it highly probable that harm would follow." *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215 (2007).  Thus, recklessness cannot be established without proof that it was known or obvious that there would be resulting harm or at least proof that it was "highly probable that harm would follow."  *Id.*

The Fourth Circuit Court of Appeals recently recognized that determining willfulness requires an individualized assessment as to each class member.  *See Souter v. Equifax Info. Servs., LLC*, No. 11-1564, 2012 WL 5992207, at *5 (4th Cir. Dec. 3, 2012).  In *Souter*, the plaintiff alleged that Equifax acted willfully because it continued to report a dismissed case even after being informed of the dismissal.  The Fourth Circuit found that the claim for statutory damages raised individual questions at class certification:

> Proof that Equifax's conduct was willful toward Souter because she sent letters in
> advance informing Equifax that the case against her was dismissed will not

19

> advance the claims of other class members.   These problems are exacerbated
> because Soutter is claiming only statutory damages, ***which typically require an***
> ***individualized inquiry.***

*Id.* (emphasis added); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 277 (4th Cir.

2010) (Wilkinson, J., concurring) ("[B]ecause statutory damages are intended to address harms

that are small or difficult to quantify, evidence about particular class members is highly relevant

to a jury charged with this task."); *Harper*, 2006 WL 3762035, at \*9 ("I refuse to hold that a

***willful*** and/or negligent violation of the FCRA exposes CRAs to liability with no factual inquiry

into whether the absent class members were injured by the violation.") (emphasis added);

*Gardner*, 2007 WL 2261688, at \*8 ("[A]ny willfulness investigation will inherently involve

individualized issues.  ***A totality of circumstances inquiry necessary to determine the***

***reasonableness and willfulness of [the defendant's] behavior cannot occur on a class-wide***

***basis.***") (emphasis added).  Willfulness, even if proven as to Plaintiff, does not prove that GIS

acted willfully toward other class members nor does it alleviate having to decide, based on

individualized factors, what the measure of those damages should be.

### 3. Individual Questions of What Constitutes "Adverse Information" Predominate over Common Questions.

Finally, the Court should deny Plaintiff's motion because individual issues predominate

as to whether the information GIS reported about each class member was "adverse."  Section

1681c(a)(5) precludes reporting outdated "adverse item[s] of information."  The FCRA does not

define "adverse," which is necessarily an individualized determination based on what happened

to *each consumer*.  In effect, Plaintiff's choice to pursue only statutory damages *still* will not

prevent the Court from having to look into the harms suffered by each class member.

"Adverse," by its common sense meaning, implies some manner of negative

consequence.  That is, the FCRA prohibits CRAs from reporting certain outdated information

that is likely to negatively impact the consumer's ability to seek employment.  Plaintiff has no

such claim here:  the *nolle prossed* counts that GIS reported had no bearing on the USPS's

decision not to hire her.  As such, the information reported about Plaintiff herself was not

adverse.  This could be true for any or all class members, and such a determination ***can only be***

***made with an individualized inquiry into each person's situation***.  Anything less would be

insufficient to support each class member's alleged claim under § 1681c.

> **B.     A Class Action is Not Superior to Other Available Methods for Fairly and
> Efficiently Adjudicating the Controversy.**

Certification under Rule 23(b)(3) also requires that a class action present "the best

available method[] for the fair and efficient adjudication of the controversy."  *Johnston v. HBO*

*Film Mgmt.*, 265 F.3d 178, 194 (3d Cir. 2001) (alteration in original) (quotation marks omitted);

*Harper*, 2006 WL 3762035, at *9 ("[Superiority] ensures that there is no other available method

of handling it which has greater practical advantages.").  Rule 23 sets forth an illustrative list of

matters pertinent to evaluating superiority, including "the class members' interests in

individually controlling the prosecution . . . of separate actions" and "the likely difficulties in

managing a class action."  Fed. R. Civ. P. 23(b)(3)(A), (D).  Here, class treatment is inferior

because class members can viably pursue individual causes of action.  Alternatively, if class

members have no economic loss, then class liability raises the specter of disproportionately large

class damages.  Finally, class treatment is inferior because the class is not manageable.

> **1.     A Class Action is Inferior Because Class Members Can Pursue Viable
> Individual Claims.**

A class action is not a superior method for resolving this dispute because class members

can successfully pursue individual recoveries together with attorneys' fees and costs.  Plaintiff's

argument that individual claims are impossibly small and untenable in this case is belied by the

fact that her case authority on this point all deals with technical FCRA violations that do not lend

themselves to actual damages, explaining the decision in those cases to pursue only statutory

damages.  By comparison, a person denied a $47,815/year job[12] as a result of their consumer

report could press claims for damages of *at least* $95,630 (for two years of lost wages), together

with a host of incidental damages including mental suffering, time lost searching for a new job,

etc.  Further, the difference in damages between a class member who applied for a $20,000/year

job and a $70,000/year job will be significant, unlike in Plaintiff's cited cases.  *Cf. Summerfield*,

264 F.R.D. at 143 ("[T]his is not a case in which the amount of the damage award is likely to

differ from consumer to consumer . . . .").  Even a consumer who lost a $10,000/year job would

have actual damages *ten times* greater than their maximum recovery in Plaintiff's class.  That the

FCRA is sometimes litigated on a class basis for technical violations is irrelevant here, where

members of the class may have meaningful actual damages.

The FCRA also provides for both attorneys' fees and cost-shifting, which all but erase

any burden of bringing a suit in the first place.  *See* 15 U.S.C. § 1681n(a)(3); *Harper*, 2006 WL

3762035, at *10 ("[T]he FCRA, by providing for the award of attorneys' fees, already provides

an incentive for the putative class members to bring individual claims."); *Klotz v. Trans Union,

LLC*, 246 F.R.D. 208, 217 (E.D. Pa. 2007) ("[T]he FCRA requires that a court award a

successful plaintiff attorneys' fees, and punitive damages are available for violations of the

FCRA that were willful, as the plaintiff alleges here.  These financial incentives might not

encourage each putative class member to bring suit, ***but they dispel the notion that a class

action is the only way to adjudicate the lawfulness of the defendant's practices.***") (emphasis

added; citation omitted); *LaRocque v. TRS Recovery Servs., Inc.*, 285 F.R.D. 139, 153 (D. Me.

2012) (recognizing that provisions for statutory damages and attorneys' fees mean that

---

[12] $47,815 is the average private employer salary in the United States.  Class Br., Ex. G.

"Plaintiffs in these contexts . . . do not necessarily require class action lawsuits in order to be able to satisfy small individual claims.") (cited in Class Br. at 4).  Indeed, the ability to recover attorneys' fees and substantial damages if successful means that any class member would be better off proceeding individually than as a member of Plaintiff's putative class, where they are capped at a recovery of $1,000.[13]

### 2.    Alternatively, a Class Action is Inferior Because it Subjects GIS to Substantial Liability Disproportionate to the Alleged Harms.

Even if the Court finds that a lack of actual damages among class members necessitates a class action, it should nonetheless deny certification because class treatment would impose damages grossly disproportionate to the harm suffered.  The threat of tens of millions of dollars in liability where class members suffered no economic loss is not commensurate with GIS's alleged actions in this case:  being too complete in reporting publicly available information.  The Third Circuit expressed concern in *Newton* that "granting certification may generate unwarranted pressure to settle nonmeritorious or marginal claims."  259 F.3d at 168; *see also Hydrogen Peroxide*, 552 F.3d at 310 ("In some cases, class certification may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.").  Such pressure should be considered when evaluating the desirability of class treatment.  *See Newton*, 259 F.3d at 168 n.8.[14]

---

[13] That is, as a member of Plaintiff's class, any class member could theoretically recover a maximum of $1,000 together with some measure of punitive damages, and spend nothing on attorneys' fees.  Because of the FCRA's cost-shifting provisions, the same plaintiff could, in an individual suit, recover actual damages, a maximum of $1,000 in statutory damages together with some measure of punitive damages, and spend nothing on attorneys' fees.

[14] This is not a case where liability is by any means a certainty.  Plaintiff's reliance on *Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) is misplaced.  In *Serrano*, the court denied a motion to dismiss a claim under § 1681c because it found that the plaintiff had stated a plausible claim where the CRA had indicated the existence of certain obsolete information.  *Id.* at 690-92.  **It did not make any merits determination of the plaintiff's claim,**

Other circuits have also expressed doubt that a class action could be superior when the plaintiffs claim "no economic harm" and "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003); *see also Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 507 (N.D. Ga. 2006) (declining to certify a nationwide consumer class action where the imposition of statutory damages as to the class would create liability "grossly disproportionate" to the harm suffered by the class members). That point is starkly illustrated here, where even Plaintiff cannot claim any economic harm as a result of GIS's alleged FCRA violations.

If this is, as Plaintiff claims, a situation where actual damages are non-existent, then a class action is not superior because the certified class would threaten GIS with liability grossly disproportionate to the alleged wrongs. Plaintiff's proposed class could easily threaten GIS with liability of more than $30 million, plus attorneys' fees. The risk of such damages may unfairly pressure GIS to settle, giving up its right to pursue meritorious defenses as to the class because the risk of exposure (and costs of evaluating its defenses as to each class member) would be too large.

###### 3.    A Class Action is Inferior Because Aggregate Treatment of Plaintiff's Proposed Class is not Manageable.

Finally, superiority requires the Court to address "the difficulties likely to be encountered in the management of a class action." *Newton*, 259 F.3d at 191 (quoting Fed. R. Civ. P. 23(b)(3)(D)). In that regard, the superiority requirement goes hand-in-hand with predominance because where individual questions predominate – as they do here given GIS's defense to each class member's claim – a class action is not the best alternative for resolving the class members'

---

*nor did it address any of GIS's defenses in this case.* GIS distinguishes the *Serrano* case at length in its brief in support of summary judgment.

claims.  *See id.* ("[T]he need for individualized inquiry . . . [is] a mind-boggling undertaking. . . . [I]t is difficult to imagine how this case can be tried.") (citations and quotation marks omitted); *Johnston*, 265 F.3d at 194 (affirming the district court's finding that the individualized inquiry necessary to determine class issues necessarily made a class action inferior); *Harper*, 2006 WL 3762035, at *9 (finding that because the proposed class would require individualized determinations of liability, "individual actions would have greater practical advantage than a class adjudication on these claims").  As such, for the reasons that Plaintiff's class is not ascertainable and individual issues predominate, class treatment is also inferior.

## CONCLUSION

The Court should deny Plaintiff's motion for class certification.

Respectfully submitted this 30th day of April, 2013.

<u>      /s/ Robert E. Campbell      </u>

| | |
|---|---|
| Robert E. Campbell | Cindy D. Hanson (admitted *pro hac vice*) |
| WHITE & WILLIAMS LLP | John P. Jett (admitted *pro hac vice*) |
| LibertyView, Suite 400 | KILPATRICK TOWNSEND & |
| 457 Haddonfield Rd. |    STOCKTON LLP |
| Cherry Hill, NJ 08002-2220 | 1100 Peachtree Street, Suite 2800 |
| Telephone: (856) 317-3600 | Atlanta, GA 30309 |
| | Telephone:    (404) 815-6500 |

*Counsel for Defendant General Information Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2013, I electronically filed the foregoing

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**

**MOTION FOR CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF system

which will automatically send email notification of such filing to all attorneys of record:

Noah Axler
DONOVAN SEARLES, LLC
1845 Walnut St.
Ste 1100
Philadelphia, PA 19103
215-732-6067
Fax: 215-732-8060
Email: naxler@donovansearles.com

James A. Francis
John Soumilas
Erin A. Novak
FRANCIS & MAILMAN, PC
Land Title Bldg 19th Floor
100 S. Broad St.
Philadelphia, PA 19110
215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com

Janet F. Ginzberg
Michael G. Hollander
COMMUNITY LEGAL SERVICES
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3794
Email: jginzberg@clsphila.org
Email: mhollander@clsphila.org

Tony West
Maame Ewusi-Mensah Frimpong
Michael S. Blume
Kenneth L. Jost
Gerald C. Kell
U.S. DEPARTMENT OF JUSTICE
P.O. Box 386
Washington, D.C. 20044
Email: gerald.kell@usdoj.gov

/s/ Robert E. Campbell
Robert E. Campbell

*Counsel for Defendant*
*General Information Services, Inc.*