**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAMARA T. KING, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.:  2:10-cv-06850-PBT |
| GENERAL INFORMATION SERVICES, INC., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Cindy D. Hanson (admitted *pro hac vice*)          Robert E. Campbell
John P. Jett (admitted *pro hac vice*)

KILPATRICK TOWNSEND &                    WHITE & WILLIAMS, LLP
  STOCKTON, LLP                             LibertyView, Suite 400
1100 Peachtree Street, Suite 2800              457 Haddonfield Rd.
Atlanta, GA 30309                              Cherry Hill, NJ 08002-2220
Telephone: (404) 815-6500                      Telephone: (856) 317-3600
Facsimile: (404) 815-6555                      Facsimile: (856) 317-1342

*Counsel for Defendant General Information Services, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ..................................................................................3

ARGUMENT AND CITATION TO AUTHORITY ...........................................6

    I.    As a Matter of Law GIS Did Not Violate FCRA § 1681c by Reporting Plaintiff's Complete Records of Conviction............................................7

        A.    The FCRA Requires Completeness of Reported Information.............................................................................8

        B.    GIS Reported Plaintiff's Complete Records of Conviction. .........................................................................12

    II.    The Court Should Grant GIS Summary Judgment on Plaintiff's Willfulness Claim. ................................................................13

        A.    A Violation of the FCRA is only Willful Where the CRA's Interpretation is Objectively Unreasonable. .............................14

        B.    GIS's Interpretation of Section 1681c Was Not Objectively Unreasonable. ................................................16

            1.    The FCRA Does Not Address Reporting *Nolle Prossed* Counts as Part of Records of Conviction..................................16

            2.    GIS's Interpretation is Rooted in the Text and Purpose of the FCRA. ...............................................................18

            3.    There is no Contrary Authority from the Courts of Appeals or the FTC Regarding GIS's Interpretation................18

    III.    As a Matter of Law, GIS Did Not Violate FCRA § 1681c by Reporting Plaintiff's *Nolle Prossed* Counts Because They Were Not Adverse. ...................19

    IV.    Plaintiff has No Injury in Fact and Thus Lacks Standing.....................20

    V.    The Court Should Grant GIS Summary Judgment Because Section 1681c is an Unconstitutional Restriction on Free Speech. ...............................23

    VI.    The Court Should Grant GIS Summary Judgment on Plaintiff's Section 1681k Claim Because the Report was Complete and Up-to-Date.........................23

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009) ................................... 21

*Doe v. Nat'l Bd. of Med. Exam'rs.*, 199 F.3d 146 (3d Cir. 1999).................................. 22

*Elf Atochem N. Am. v. United States*, 866 F. Supp. 868 (E.D. Pa. 1994) ....................... 6

*Fair Housing Council of Suburban Philadelphia v. Main Line Times*, 141 F.3d
439 (3d Cir. 1998)........................................................................................ 21, 22

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141
F.3d 71 (3d Cir. 1998) ...................................................................................... 22

*Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688 (N.D. Ga. 2012) .......................... 9, 24

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).................................................. 23

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ............................................................. 8, 9

*Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 261 (3d Cir. 2012)........................... 15, 16, 18

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ......................... 9

*Haro v. Shilo Inn*, No. 08-6306-AA, 2009 WL 2252105 (D. Or. July 27, 2009)......... 10

*Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164 (3d Cir. 2001).......................... 22

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984) ........................... 8, 9

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009) ............... 15

*Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012)...................... *passim*

*Long v. Tommy Hilfiger U.S.A., Inc.*, No. 09-1701, 2011 WL 635271 (W.D. Pa.
Feb. 11, 2011) ................................................................................................. 22

*Lujan v. Defendants of Wildlife*, 504 U.S. 555 (1992)............................................... 21

*Max Daetwyler Corp. v. Input Graphics, Inc.*, 583 F. Supp. 446 (E.D. Pa. 1984) ......... 6

*Mellon Nat'l Bank & Trust Co. v. Nationwide Mut. Ins. Co.*, 32 F.R.D. 365 (W.D.
Pa. 1962) .......................................................................................................... 6

*Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001), *aff'd*,
319 F.3d 87 (2d Cir. 2003) ............................................................................... 24

*Paton v. La Prade*, 471 F. Supp. 166 (D.N.J. 1979) ........................................................ 6

*Raines v. Byrd*, 521 U.S. 811 (1996) ........................................................................ 23

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ........................................... *passim*

*Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) ......................... 17, 19

*Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) .......................... 15

*Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998) ....................... 23

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142 (2009) ................................ 21

*Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486 (7th Cir. 2012) ................. 15

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ................. 23

## Statutes and Rules

15 U.S.C. § 1681b .......................................................................................... 8

15 U.S.C. § 1681c ................................................................................... 1, 6, 7

15 U.S.C. § 1681i ................................................................................ 10, 11, 13

15 U.S.C. § 1681k ..................................................................................... 6, 9, 24

15 U.S.C. § 1681n ...................................................................................... 17, 18

Fed. R. Civ. P. 56(a) ....................................................................................... 6

## Other Authorities

Black's Law Dictionary 1074 (8th ed. 2004) ................................................................ 3

Fed. Trade Comm'n Staff Opinion Letter, 1999 WL 33932137 (Dec. 16, 1999) ........... 10, 12, 22

Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act*
  68  (2011), available at http://www.ftc.gov/os/2011/07/
  110720fcrareport.pdf ................................................................................ 11

Oxford English Dictionary (2d ed. 1989) ................................................................. 18

U.S. EEOC, EEOC Enforcement Guidance No. 915.002, *available at*
  http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm#VB9 ........................... 12

## INTRODUCTION

This case concerns an employment background report prepared by General Information Services ("GIS") in connection with Plaintiff's employment application to the United States Postal Service ("USPS"). The Fair Credit Reporting Act ("FCRA") requires a consumer reporting agency ("CRA") such as GIS to completely and accurately report criminal history available in the public record. Plaintiff's central claim in this case is that GIS's report was *too complete*. Specifically, although it is undisputed that the GIS report accurately reflected Plaintiff's criminal conviction, Plaintiff argues that GIS violated the FCRA by reporting the complete public record information about that conviction: that it included ten *nolle prossed* counts, all stemming from a single event in a single criminal case. The parties do not dispute the material facts, but disagree as to the legal significance of those facts, making this case appropriate for summary judgment.

First, GIS did not violate the FCRA. Section 1681c[1] of the statute precludes CRAs from reporting certain adverse items of information that antedate a report by more than seven years. That prohibition does not apply to "records of convictions," which are reportable regardless of age. 15 U.S.C. § 1681c(a)(5) (2012). The statute does not explicitly address, however, what constitutes "records of convictions" or whether a CRA violates the statute by reporting *nolle prossed* counts included in the public record as **part of complete records of convictions**. The text of the FCRA and the authority interpreting that statute, however, do reveal that the FCRA's purpose is to ensure that CRAs report complete public record items of information. Here, GIS reported the complete records of conviction concerning Plaintiff: a guilty plea to one count and ten *nolle prossed* counts.

---

[1] As noted herein and in GIS's motion for judgment on the pleadings, Plaintiff's claim is barred in its entirety because § 1681c is an unconstitutional restriction on free speech.

1

Second, even if this Court determines that GIS's interpretation of the statute was incorrect, GIS did not *willfully* violate the FCRA, which is the only basis on which Plaintiff seeks damages.  The FCRA will only support a claim for willfulness if the CRA's interpretation is "objectively unreasonable."  Put differently, willfulness liability cannot attach where:  (1) the FCRA does not plainly speak to the issue, (2) the CRA's interpretation is not objectively unreasonable, and (3) there is no appellate or regulatory authority to the contrary.  Here, the FCRA does not specifically address whether a CRA must exclude *nolle prossed* counts included in reportable records of conviction, thus GIS's interpretation was reasonable in light of the FCRA's emphasis on completeness.  Further there was at the time – and remains – no counter-authority from the appellate courts or the Federal Trade Commission casting doubt on GIS's interpretation of its obligations.  Consequently, even if the Court determines that GIS incorrectly interpreted its obligations, recent controlling authority requires the Court to grant summary judgment to GIS on Plaintiff's willfulness claims.

Third, even if Plaintiff can show that the *nolle prossed* counts were not part of her records of conviction, there is no dispute that the information GIS reported was not "adverse." Section 1681c(a)(5) prohibits CRAs from reporting outdated "adverse item[s] of information." *Id.*  Here, the *nolle prossed* counts were not *adverse* because they had no bearing on Plaintiff not getting the job for which she applied.  As such, GIS did not violate FCRA § 1681c.

Fourth, because the information was not adverse and did not impact USPS's employment decision, Plaintiff has no injury sufficient to confer Article III standing.  An actual injury is an inviolable requirement of pursuing this or any case.

Finally, GIS has no liability under FCRA § 1681k because the information it reported was complete and up to date within the meaning of that provision.

## STATEMENT OF FACTS

The parties do not dispute the material facts.  In 2000, the police stopped a car, in which Plaintiff was riding, on suspicion that the driver and other passengers had been stealing cars. Deposition of Shamara T. King ("King Dep.") 24:18-25, attached hereto as **Exhibit 1**.  Plaintiff was arrested and charged with eleven criminal counts of conspiracy.  *Id.* at 25:1, 25:25-26:4; Background Report ("Report"), at p. GIS000700, Exhibit A to Declaration of Lori Webb ("Webb Decl."), attached hereto as **Exhibit 2**.  The case resulted in a conviction:  Plaintiff pled guilty to one count, for which she received probation.  King Dep. 26:9-13.  Under Plaintiff's plea deal, the State did not prosecute the remainder of the counts stemming from Plaintiff's arrest – that is, the counts were *nolle prossed*.[2]  King Dep. 26:19-25.

In or around February 2010, Plaintiff applied for a job with the USPS.  King Dep. at 33:14-17.[3]  The USPS ordered a criminal background check from GIS on February 23, 2010. Deposition of Lori Webb ("Webb Dep.") 91:24-92:5, 149:19-22, attached hereto as **Exhibit 3**; Webb Decl. ¶ 11.  Between February 23, 2010 and March 2, 2010, GIS prepared Plaintiff's report by accessing publicly available criminal record information matching Plaintiff and including on Plaintiff's report only information that GIS retrieved from searches of public records at the time of the report.  Webb Dep. 150:6-12, 151:4-9, 155:11-156:6, 159:8-160:8.

GIS researchers prepare employment-purpose consumer reports by gathering public record information about consumers available at the time of a report's creation.[4]  *See* Webb Dep.

---

[2] A *nolle prossed* count is one for which the prosecuting attorney abandons prosecution.  *See generally* Black's Law Dictionary 1074 (8th ed. 2004) (defining *nolle prosequi*).

[3] Although Plaintiff recalled that she applied in March 2010, the report at issue in this case shows that the USPS ordered it on February 3, 2010.  Report, at p. KING000699.

[4] GIS identifies sources to search and records to validate based on an initial criminal database search, but it only reports the verified information based on jurisdictional searches.  *See* Webb Dep. 96-100.

110:3-8; Webb Decl. ¶ 6.  When GIS prepares a report, it initially runs a criminal background search using an existing database.  *Id.* ¶ 7.  This information guides GIS researchers toward jurisdictions that GIS should search for public records.  *Id.*  GIS then researches the public record status of information in those jurisdictions about consumers at the time that it prepares the reports, ensuring that the information included in each report is complete and up to date.  *Id.* ¶ 8.  As a matter of practice, if GIS's searches reveal records of convictions for a consumer, GIS reports the complete public records of convictions that appear in the public records index.  *Id.* ¶ 9. GIS does not report criminal cases that do not result in a conviction if that information pre-dates the report by more than seven years.  *Id.* ¶ 10.

Here, GIS verified Plaintiff's criminal record information by accessing and reporting the public records of convictions available concerning Plaintiff's 2000 state court conviction.  Webb Dep. 124:5-125:24.  GIS has an Online Court Interface ("OCI") system that allows GIS to gather records from the Pennsylvania judicial system.  *See* Declaration of John Hanks ("Hanks Decl."), ¶ 7, attached hereto as **Exhibit 4**.  The OCI system links directly to publicly available information in the Pennsylvania courts' public record system.  *Id.* ¶¶ 7-8.  For Plaintiff specifically, a GIS employee ordered a search of Plaintiff's name in Pennsylvania criminal records based on preliminary information from a criminal background search.  Webb Decl. ¶¶ 14-16.  The OCI system interfaced with the Pennsylvania court system, matched Plaintiff's name, and downloaded the complete records of convictions for Plaintiff.  Webb Decl. ¶¶ 15-17; Hanks Decl. ¶ 11.  Per GIS's normal procedures, when the system found public records matching

4

Plaintiff, it downloaded and saved a copy of her complete records of conviction into a GIS database.[5]  Hanks Decl. ¶¶ 11-12; Ex. A to Hanks Decl.

The copy of the records of conviction from the Pennsylvania judiciary includes on its face the disposition of all eleven counts from the 2000 event:  a guilty plea to one count and ten *nolle prossed* counts, all stemming from the single event.  Ex. A to Hanks Decl.  GIS transcribed those complete public records of convictions onto Plaintiff's report for the USPS.  Webb Dep. 160:2-8, 161:1-9.  Plaintiff does not dispute that the reported records belong to her.  *See* King Dep. 26:19-25 (admitting that she pled guilty to one count and that the remaining counts were *nolle prossed*).  It is thus undisputed that the GIS report accurately and completely reflected Plaintiff's actual records of convictions at the time of the report.

Plaintiff seeks only to recover statutory damages pursuant to FCRA § 1681n, together with punitive damages and attorneys' fees.  *See* Amended Complaint ("Compl.") Prayer for Relief (Dkt. 14).  Plaintiff does not seek actual damages because she has none.  GIS's alleged violation (in reporting Plaintiff's *nolle prossed* counts) had no bearing on the USPS's decision not to hire Plaintiff.  Although Plaintiff presents the inclusion of *nolle prossed* counts as the reason for the USPS denying her employment application, it was her *conviction* on one count of criminal conspiracy (the reportability of which is not at issue) that was the basis of the USPS's decision not to hire her.  *See* Declaration of Linda M. Madden ("Madden Decl."), attached hereto as **Exhibit 5**.[6]  As the USPS stated in a letter to Plaintiff, it "denied Ms. King's February 21, 2010 application for employment because of Ms. King's January 2000 felony conviction for 'criminal conspiracy engaging in theft by unlawful taking.'"  *Id.* ¶ 5, Ex. A (showing, as the

---

[5] The copy attached to the Hanks Declaration as Exhibit A is the exact copy that GIS accessed in 2010 when preparing Plaintiff's report.

[6] Exhibits to Ms. Madden's declaration have been redacted of identifiable personal information.

reason for denying Plaintiff's application:  the single felony conviction count).  The presence of *nolle prossed* counts on Plaintiff's background report "***had no impact on USPS's decision to deny Ms. King's February 21, 2010 application for employment.***"  *Id.* ¶ 8 (emphasis added).  Stated another way, Plaintiff would not have received a USPS job regardless of the reporting that she now challenges.

Although Plaintiff admits that the reported conviction records were complete and accurate, she alleges GIS violated the FCRA, 15 U.S.C. § 1681c, by reporting *nolle prossed* counts predating the report by more than seven years.  Compl. ¶ 47(c).  She further alleges that the reporting of this same information violated GIS's duty under 15 U.S.C. § 1681k to either notify her that it was reporting public records or to use strict procedures to ensure that the records reported were up to date.  *Id.* ¶ 47(a), (b).[7]  She finally alleges that GIS's violations were willful, entitling her to statutory damages under the FCRA.  *See id.* ¶ 47.  The Court should grant GIS summary judgment on all claims.

## ARGUMENT AND CITATION TO AUTHORITY

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where, as here, the Court faces purely legal questions, that analysis is appropriate at summary judgment.  *Elf Atochem N. Am. v. United States*, 866 F. Supp. 868, 870 (E.D. Pa. 1994); *see also Paton v. La Prade*, 471 F. Supp. 166, 168 (D.N.J. 1979) ("Moreover, questions of law may be resolved by summary judgment."); *Mellon Nat'l Bank & Trust Co. v. Nationwide Mut. Ins. Co.*, 32 F.R.D. 365, 366 (W.D. Pa. 1962) (same); *Max Daetwyler Corp. v.*

---

[7] Generically, GIS refers to any information that section 1681c(a) might prohibit as "obsolete" information.  Section 1681k(a) requires "up to date" information, but defines it differently.  Plaintiff's Complaint attempts to conflate the two distinctly different types of information by referring to "outdated" information.

*Input Graphics, Inc.*, 583 F. Supp. 446, 450 (E.D. Pa. 1984) (noting that where basic facts are undisputed, resolution of purely legal question is appropriate at summary judgment).  Here, there are issues purely of law that the Court can resolve at summary judgment.

**I.      As a Matter of Law GIS Did Not Violate FCRA § 1681c by Reporting Plaintiff's Complete Records of Conviction.**

Plaintiff claims that GIS should have refused to report the *nolle prossed* counts present on Plaintiff's records of conviction because they are beyond the FCRA's seven-year time frame for reporting "adverse" items of information under 15 U.S.C. § 1681c(a)(5).  *See* Compl. ¶ 13.[8] Importantly, this seven-year limit does not apply to "records of convictions of crimes," which can be reported regardless of age.  *Id.*  This motion for summary judgment therefore primarily turns on the meaning of the phrase "records of convictions" – that is, whether GIS violated § 1681c by reporting Plaintiff's *complete* records of convictions, which the court's systems reported as a single record showing a conviction on one count and ten *nolle prossed* counts in a single criminal case stemming from the same event.

As an initial matter, the records that GIS reported – including the *nolle prossed* counts – are "records of convictions" under the language of the statute.  The information that GIS reported was what publicly available records said was the outcome in the criminal case in which Plaintiff was convicted – that is, ***records of her conviction***.  If GIS had simply printed and provided a copy of those records from the Pennsylvania judiciary's website, it would have included the exact same information about the *nolle prossed* counts as GIS provided.  *Compare* Report, at

---

[8] Plaintiff's Amended Complaint also describes the *nolle prossed* counts as "records of arrest." *See, e.g.*, Compl. ¶¶ 14-16.  The records that GIS reported were court records showing that Plaintiff was convicted in a criminal case, *not* police records showing that Plaintiff was apprehended by a police officer. Webb Decl. ¶ 17. That is, they were not "records of arrest."

p. GIS000700 *with* Ex. A to Hanks Decl.  That information falls within the plain meaning of the term "records of convictions."

GIS's interpretation is the only common sense way to interpret § 1681c.  Neither the text of the FCRA, nor any court decisions interpreting it, defines what constitutes reportable "records of convictions."  Specifically, no court has addressed how a CRA should reconcile its obligation to provide complete information with the prohibition against reporting adverse information more than seven years old where that information is part of complete records of conviction.  In the absence of express guidance in statutory text or case authority, other portions of the FCRA dealing with a CRA's reporting obligations are instructive as to how CRAs should handle reporting "records of convictions."  The FCRA requires that CRAs report **complete** items of public record information.  To that end, both the letter and the spirit of the FCRA prove that CRAs should report complete records of convictions, including both the counts on which conviction occurred and those that were *nolle prossed*.

## A.    The FCRA Requires Completeness of Reported Information.

The purpose of the FCRA is to ensure that consumer reporting agencies report **complete** information.  *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 948 (9th Cir. 2001) ("Consumer reporting agencies . . . must exercise care in accurately and *completely* reporting credit information.") (emphasis added); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 43 n.9 & 44 n.12 (D.C. Cir. 1984) (noting that one of the primary concerns in debating the introduction of the FCRA was the prevalence of "incomplete information" on consumer reports).

The FCRA's emphasis on completeness in reported information is reflected repeatedly throughout the statute.  *See*, *e.g.*, 15 U.S.C. § 1681b(b)(3)(B)(i)(IV) ("[T]he consumer may, upon providing proper identification, request a free copy of a report and may dispute with the

consumer reporting agency the accuracy or *completeness* of any information in a report");
§ 1681s-2(a)(2)(B) (requiring furnishers of information to correct and update any information
that "the person determines is not *complete* or accurate"); § 1681m(a)(4)(B) (requiring notice of
the consumer's right to dispute the "accuracy or *completeness* of any information in a consumer
report furnished by the [CRA]") (emphasis added throughout).  Courts have likewise recognized
the FCRA's emphasis on completeness.  *See, e.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584
F.3d 1147, 1164 (9th Cir. 2009) ("The purpose of § 1681s-2(b) is to require furnishers to
investigate and verify that they are in fact reporting *complete* and accurate information to the
CRAs after a consumer has objected to the information in his file.") (emphasis added); *Gill*, 265
F.3d at 948; *Koropoulos*, 734 F.2d at 43 n.9 & 44 n.12.

      The FCRA's emphasis on completeness is perhaps best illustrated in FCRA § 1681k.
Section 1681k requires CRAs that create employment-purpose reports to either send
contemporaneous notice of such reporting or maintain "strict procedures designed to insure that
whenever public record information which is likely to have an adverse effect on a consumer's
ability to obtain employment is reported it is ***complete*** and up to date."  15 U.S.C. § 1681k
(emphasis added).  Case law and FTC guidance interpreting § 1681k provide context as to what
constitutes "completeness" of reported information.

      In *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688 (N.D. Ga. 2012), the court stated that
"[f]or purposes of [§ 1681k], items of public record relating to arrests, indictments, convictions,
suits, tax liens, and outstanding judgments shall be considered up to date ***if the current public
record status of the item at the time of the report is reported.***"  *Id.* at 692 (footnote omitted;
emphasis added).  Importantly, the court stressed that the test is not whether the entire report is

complete, but whether the individual reported items are a complete reflection of what is available in the public record for those items:

> The distinction between a consumer report and an item of public record contained within that report is important. The term "consumer report" refers to the entire report disclosed by the CRA and *all* of the information contained therein. A record is a specific item of public record, such as a criminal conviction, included within a consumer report. Section 1681k(a)(2) requires "each *item* reported to be complete and up to date."

*Id.* at 692 n.6; *see also Haro v. Shilo Inn*, No. 08-6306-AA, 2009 WL 2252105, at *3 (D. Or. July 27, 2009) (granting summary judgment in favor of a CRA on a 1681k claim where the CRA reported the information as it appeared in the public record at the time of the report).

These cases comport with FTC guidance on how CRAs comply with § 1681k:

> We view [§ 1681k], which is specifically cast in terms of "items of (public record) information" to require only that each *item* reported be complete and up to date. ***For example, if the CRA reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report.*** Similarly, if the CRA reports a conviction, it must report a reversal that has occurred on appeal. We understand that a report that deliberately omits arrest data at an employer's request is not a "complete" reflection of every single piece of information that might be gleaned from the public record. Because we read Section 613(a)(2) [1681k(a)(2)] as being item-specific, however, we believe the CRA complies with that provision if its report is "complete and up to date" in the sense that it includes ***the current public record status each individual item reported.***

Fed. Trade Comm'n, Staff Opinion Letter, 1999 WL 33932137, at *1 (Dec. 16, 1999) (emphasis added) [hereinafter "FTC Letter"]. Section 1681k thus ensures that CRAs transcribing public record information onto consumer reports do not mislead employers by omitting information that appears on the public record.

The FCRA's focus on completeness also appears in § 1681i, which allows a consumer to dispute the "the completeness or accuracy of any item of information" in a consumer report. 15 U.S.C. § 1681i(a)(1)(A). Indeed, in a reflection of how critical completeness is to effectuating

the FCRA's purpose, § 1681i states if the investigation of such a dispute results in a finding that the reported information was incomplete, the CRA is required to modify it (to be complete) or to delete it entirely. *Id.* § 1681i(a)(5)(A). In short, the statute prefers that a CRA report *no* information before it report incomplete information.

The FTC's recent compendium of FCRA guidance similarly illustrates the weight placed on completeness. First, the FTC stresses that CRAs have a ***duty*** to report all material information available to them. Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* 68 (2011), available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf ("A CRA ***must*** report significant, verified information it possesses about a credit account or other item of information included in the consumer's credit file.") (emphasis added). Second, the FTC states that the role of a CRA is to present information as it appears in the public records. *Id.* at 67 ("A CRA ***must*** accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face."). Third, the FTC takes the same position as to § 1681k as the case law discussed above: a CRA must accurately report the public record status of each item of information at the time of the report.[9] *Id.* at 82 ("[B]ecause the requirement to report complete and up to date information is item-specific, ***the CRA complies if its report includes the current, complete, and up-to-date public record status of each individual item reported.***") (emphasis added).

---

[9] The FCRA's requirement of completeness does not conflict with the prohibition against obsolete information in FCRA § 1681c. Section 1681c prohibits disclosure of adverse information other than "records" of conviction. For example, if a conviction was, after appeal, reduced to a lesser included offense, the complete records of conviction would include the action after appeal, even though that is not *the* record of conviction, which would merely be the fact of an earlier conviction. Reporting only the earlier document, not the complete *records* of conviction, would run afoul of the obligations of section 1681k – would be incomplete. This makes particular sense here, where the court disposed of the *nolle prossed* counts in the same plea bargain as it accepted the Plaintiff's guilty plea. These were not separate events with separate records: they were part of Plaintiff's record*s* of conviction in 2000.

**B.      GIS Reported Plaintiff's Complete Records of Conviction.**

Here, GIS reported Plaintiff's complete records of conviction for the conviction that is the subject of her Complaint.  Plaintiff's criminal conviction on one count and the *nolle prossed* counts together constitute her complete records of conviction – a single "item" of criminal record information flowing from a single incident.  GIS reported the public record status of Plaintiff's records of conviction at the time of the report, which showed both the guilty plea and the *nolle prossed* counts, exactly as it appeared on the GIS report.  *See* Ex. A to Hanks Decl.  Thus, not only did GIS's reporting in this case *not* violate any provision of § 1681c, it was in keeping with both the spirit of the FCRA and with FTC guidance and court opinions.  *Cf.* FTC Letter, 1999 WL 33932137, at *1 (discussed *supra*) (stressing that completeness requires a CRA to report, for example, the final disposition of indictment charges).

The fact that § 1681i authorizes consumers to dispute the information in their report based on *incompleteness* proves that Plaintiff's proposed interpretation, in which a CRA is forced to excise certain items of public record information that are part of reportable records of conviction, would run afoul of the spirit of the FCRA.  For example, if GIS in this case had deleted the *nolle prossed* information, GIS would not have reported the "complete" records of conviction.  If GIS had done so, Plaintiff, rather than bringing suit under 1681c, could have lodged a dispute under §§ 1681i and 1681k over the incompleteness of her report.[10]  The result of

---

[10] Many consumers may wish to highlight to an employer that the counts against them were trumped up in the first instance as proven by the state's decision not to pursue prosecution on the bulk of the indictment.  Here, although Plaintiff chose to dispute the inclusion of that material, others – including members of her proposed class – may *prefer* that such information be reported and may dispute the report for being incomplete if that information is arbitrarily excluded.  This may be especially true following the Equal Employment Opportunity Commission's guidance that employers should individually assess any additional information that an applicant provides about the facts and circumstances surrounding the offense or conduct.  *See* U.S. EEOC, EEOC

12

such a dispute would have been either that GIS deleted the conviction record entirely – in contravention of § 1681c(a)(5), which allows reporting of such convictions – or that GIS was forced to revise the report to include the *nolle prossed* counts – the very action that Plaintiff now claims was prohibited.  *See* 15 U.S.C. § 1681i(a)(5)(A)(ii) (a CRA, after investigation, must either delete or modify the information).  The FCRA should not be twisted in such a way that a CRA is caught in a double bind where certain consumers can lodge a dispute about completeness under 1681i, forcing the inclusion of information like that at issue here, while still others (such as Plaintiff) can bring suit under 1681c seeking to impose liability for the inclusion of the very same information.  The FCRA comes down squarely on the side of complete reporting.

Without contrary authority to preclude reporting a single conviction record, GIS prepared Plaintiff's report consistent with the letter and spirit of the FCRA:  it reported Plaintiff's complete records of conviction, exactly as it appeared in the public record at the time of the report.

## II.    The Court Should Grant GIS Summary Judgment on Plaintiff's Willfulness Claim.

Even if the Court disagrees with GIS's interpretation of § 1681c, the Court should grant GIS summary judgment on Plaintiff's willfulness claim.  15 U.S.C. § 1681n imposes liability on CRAs for "willfully fail[ing] to comply" with the FCRA.  The Supreme Court's seminal decision in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), and the cases interpreting it, prove that this is a textbook case for the application of the *Safeco* rule:  GIS applied a good faith interpretation of the FCRA's requirements, one that has a logical reading within the goals of the statute, and that was made in the absence of any contrary authority.

---

Enforcement Guidance No. 915.002, *available at*
http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm#VB9.

**A.    A Violation of the FCRA is only Willful Where the CRA's Interpretation is Objectively Unreasonable.**

*Safeco* set the standard for what constitutes a willful violation of the FCRA.  In *Safeco*, consumers brought FCRA class actions against two insurance companies for alleged willful violations of the FCRA.  The district court granted summary judgment in favor of the insurers, which the Ninth Circuit Court of Appeals reversed.  The Supreme Court granted certiorari and reversed the decision of the Court of Appeals, affirming the propriety of summary judgment in favor of the insurers.  *See generally Safeco*, 551 U.S. at 55-56.

*Safeco* articulated a standard for deciding what constitutes a willful violation of the FCRA under 15 U.S.C. § 1681n.  A willful violation of the FCRA requires an act that "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 69.  In other words, even if a court disagrees with a CRA's reading and concludes that the CRA violated the FCRA, unless the CRA's interpretation was ***objectively unreasonable***, the CRA cannot be held liable for willfully violating the statute.  *Id.* at 69-70 ("While we disagree with [the defendant's] analysis, we recognize that its reading has a foundation in the statutory text, and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in [the defendant's] favor.").

One of the key considerations in deciding whether a CRA's interpretation is objectively unreasonable is whether there is guidance from the courts of appeals or the FTC "that might have warned [the CRA] away from the view it took."  *Id.* at 70.  The presence or absence of such guidance is particularly important where the statutory text does not speak directly to the issue in the case.  In *Safeco*, the Court found this lack of authority dispositive:  "Given this dearth of

guidance and the less-than-pellucid[11] statutory text, [the defendant's] reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statutory necessary for reckless liability." *Id.*

Numerous courts, including the Third Circuit, have applied *Safeco* to resolve willfulness claims under the FCRA as a matter of law. *See, e.g.*, *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 378 (3d Cir. 2012) ("[W]e conclude that Hilfiger's interpretation of [the FCRA], although erroneous, was at least objectively reasonable."); *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803-04 (7th Cir. 2010) (holding that even if the CRA's interpretation was incorrect, it was objectively reasonable and thus the CRA "did not [violate the FCRA] knowingly or recklessly"); *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) ("A consumer reporting agency does not recklessly violate the Act when it acts in accord with an objectively reasonable interpretation of the Act."); *Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 488-89 (7th Cir. 2012) (relying, *inter alia*, upon the FTC's guidance compendium to find that a company's interpretation could not be "objectively unreasonable").

The Third Circuit most recently applied *Safeco* less than six months ago to hold that a defendant's interpretation of the FCRA could not support a willfulness claim in *Fuges v. Southwest Financial Services, Ltd.*, 707 F.3d 261 (3d Cir. 2012). In *Fuges*, Judge Davis granted summary judgment in favor of a lender on the question of willfulness; the Third Circuit Court of Appeals affirmed. The court reduced *Safeco*'s holding to a simple guiding edict: "*[E]ven when a court disagrees with a party's reading of the FCRA, it may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is 'objectively*

---

[11] Although not used frequently in everyday speech, "pellucid" means "transparent," "clear," or "showing the sense clearly." Oxford English Dictionary (2d ed. 1989). Simply put, a less-than-pellucid statutory text is one whose meaning is not clear.

***unreasonable.*'*"  *Id.* at 249 (quoting *Safeco*, 551 U.S. at 69) (emphasis added); *accord Long*, 671 F.3d at 376.

The Third Circuit's *Fuges* opinion highlighted the three considerations relevant to deciding when a CRA's reading of the statute is reasonable.  *Safeco* is satisfied where: (1) the "FCRA g[ives] no clear guidance," on the specific issue at bar, (2) the proposed interpretation has "a foundation in the statutory text and a sufficiently convincing justification" to warrant its application, and (3) the CRA is interpreting the statute "in the absence of any contrary authority on the meaning" of the provisions in question because there is no guidance from either the courts of appeals or the FTC.  *Fuges*, 707 F.3d at 251; *see also Long*, 671 F.3d at 376-77 (same).

## B.    GIS's Interpretation of Section 1681c Was Not Objectively Unreasonable.

### 1.    The FCRA Does Not Address Reporting *Nolle Prossed* Counts as Part of Records of Conviction.

First, as discussed above, § 1681c does not provide CRAs any guidance on how to report criminal record information that is part of a single reportable conviction record, rather than outdated information standing alone.  Section 1681c thus satisfies the first prong of *Safeco* – the statute does not speak directly to the issue in this case – necessitating an evaluation of the soundness of GIS's interpretation of the less-than-pellucid statutory provision.

Plaintiff may argue that because the FCRA precludes reporting adverse information beyond seven years, the text of § 1681c does speak directly to the question in this case.  That is a simplistic view of the facts of this case that is not supported by the text of the statute.  This case does not involve the reporting of obsolete adverse information standing alone – *i.e.*, **not as part of records of conviction**.  GIS did not report standalone obsolete adverse information.  Instead, it reported complete records of conviction that contained non-adverse *nolle prossed* counts and a count on which Plaintiff pled guilty and was convicted, stemming from a single course of

16

criminal conduct.  The FCRA does not give any guidance as to how a CRA is to synthesize the reportability of "records of convictions" – an undefined term – with the exclusion of certain information *when the information at issue is part of records of conviction.*

Plaintiff contends that liability is clear in this case here based on *Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008).  *See, e.g.*, Memorandum of Law in Support of Plaintiff's Motion for Class Certification (Dkt. 77-1), at 10-11 (contending that *Serrano* is dispositive of GIS's liability in this case).  *Serrano* does nothing to resolve the issue presented by GIS's motion.

In *Serrano*, a CRA discovered obsolete *arrest* records about a consumer while preparing a consumer report.  *Serrano*, 557 F. Supp. 2d at 689.  The arrest records were not part of a conviction record – just arrest records standing alone.  *See generally id.*  The defendant-CRA then contacted the employer to determine the salary of the position applied for, to evaluate whether FCRA § 1681c(b)(3)'s exception for positions paying more than $75,000 applied.  *Id.* at 689-90.  In doing so, the defendant disclosed that the applicant had an obsolete arrest record but did not disclose the actual record itself – *i.e.*, the defendant relayed to the employer the *fact* of the record but not the contents of the record.  *Id.*  The issue was whether these allegations were sufficient to state a plausible claim for relief on a motion to dismiss.  The district court held that the allegations were sufficient at the pleading stage and denied the motion to dismiss.  *Id.* at 693.

*Serrano* did not address the critical issues in this case.  First, it did not address what it means to report "records of convictions."  Second, it did not address reporting *nolle prossed* counts arising from a single criminal incident in which a conviction resulted, where the *nolle prossed* counts are part of the same records of conviction.  Third, because the opinion resolved a motion to dismiss, the defendant could not present evidence that the information provided was

not actually adverse, as is the case here.  To the contrary, the only discernible holding from *Serrano* is that the allegation that a CRA indicated the existence of purely obsolete arrest information, standing alone, is sufficient to survive a motion to dismiss.  *Serrano* does not resolve GIS's liability in this case.

### 2. GIS's Interpretation is Rooted in the Text and Purpose of the FCRA.

Second, here, both the text and purpose of the FCRA support GIS's interpretation that the FCRA requires reporting complete conviction records.  As explained in detail above, GIS based its interpretation on other provisions of the FCRA and guidance interpreting the same, which universally stress completeness in reporting.  GIS followed the letter and spirit of the FCRA by favoring completeness rather than an *ad hoc* approach that would require removing relevant and reportable information from publicly available records of convictions.  Even if the Court ultimately reads the pertinent provisions of the FCRA differently than GIS, the quoted portions of the FCRA provide a convincing justification for GIS's policy of reporting complete records of conviction, which satisfies the second requirement of *Safeco*.  *See, e.g.*, *Long*, 671 F.3d at 377 ("[D]espite the fact that we reject Hilfiger's interpretation of the [FCRA] language, it was at least sufficiently persuasive to convince the District Court to adopt it."); *Fuges*, 707 F.3d at 252 ("Southwest's reading of the applicable provisions of the FCRA has ***some foundation*** in the statutory text, and was therefore not objectively unreasonable. . . .   Southwest could reasonably interpret that provision [in the way it did] . . . .") (emphasis added).

### 3. There is no Contrary Authority from the Courts of Appeals or the FTC Regarding GIS's Interpretation.

Third and finally, GIS applied its interpretation in the absence of any contrary authority from either a United States Court of Appeal or from the Federal Trade Commission.  GIS has not

identified any authority, at any level, to guide its reporting in this situation.[12]  The only case with

any substantive discussion of § 1681c – *Serrano*, discussed above – is inapplicable to deciding

GIS's willfulness under this third prong of the *Safeco* test.  First, as noted in detail above,

*Serrano* does not address the issue presented by GIS's reporting in this case.  Second, *Serrano* is

legally irrelevant in evaluating willfulness:  the Third Circuit has expressly held that *district*

*court-level case authority* has no bearing on deciding whether a CRA's interpretation was

willful.  *Long*, 671 F.3d at 377 ("Although Long argues that there was district court authority

putting Hilfiger on notice that its interpretation was incorrect, **there was no guidance from the**

**federal courts of appeals on this issue.**") (emphasis added).  There remains no appellate

authority or FTC guidance regarding GIS's interpretation of § 1681c.

  In sum, the three *Safeco* factors warrant summary judgment in favor of GIS on Plaintiff's

willfulness claims.  GIS's interpretation of § 1681c was not *objectively unreasonable*, nor was it,

as *Safeco* further mandates, an interpretation by which GIS "ran a risk of violating the law

substantially greater than the risk associated with a reading that was merely careless."  *Safeco*,

551 U.S. at 69.

**III.** **As a Matter of Law, GIS Did Not Violate FCRA § 1681c by Reporting Plaintiff's**
   ***Nolle Prossed* Counts Because They Were Not Adverse.**

  GIS is further entitled to summary judgment on Plaintiff's FCRA § 1681c claims because

GIS did not report obsolete "adverse" information.  Section 1681c(a)(5) only prohibits CRAs

from reporting an "adverse item of information" that is more seven years old, other than records

---

[12] To the contrary, authorities interpreting the FCRA universally stress the importance of
completeness.  *Cf.* FTC Letter, 1999 WL 33932137, at *1 (emphasizing as an example of
completeness that a CRA should report the public record status of an item at the time of the
report, including the disposition of indictments).

of conviction.  That limitation is important:  the statute does not prohibit simply reporting obsolete information, but rather obsolete *adverse* information.

Here, Plaintiff's *nolle prossed* counts were not "adverse" information subject to the prohibitions of § 1681c(a)(5).  As noted in detail above, the uncontroverted evidence in this case proves that the *nolle prossed* counts that GIS reported had no bearing on the USPS's decision not to hire Plaintiff.  *See generally* Madden Decl. ¶ 8 (the *nolle prossed* counts "had no impact on USPS's decision to deny Ms. King's February 21, 2010 application for employment").  Because the information of which Plaintiff complains was irrelevant in the USPS's hiring decision, it was not *adverse* to Plaintiff.  As such, GIS could not – and did not – violate § 1681c by reporting it.

The information GIS reported was neutral at worst.  It was simply a fact of her background that had no relevance to the outcome of her job offer.  Section 1681c(a)(5) does not protect consumers from positive or neutral information that is more than seven years old; thus, Plaintiff cannot prove the elements of her claim under § 1681c(a)(5) and the Court should grant summary judgment for GIS.

## IV.   Plaintiff has No Injury in Fact and Thus Lacks Standing.

The Court should also grant GIS summary judgment because Plaintiff lacks standing. Plaintiff does not allege any actual injury and indeed has none – the reporting that is the subject of her Complaint *did not cause her any injury* because the USPS denied Plaintiff's job application on the basis of Plaintiff's reportable criminal conviction.  *See* Madden Decl. ¶¶ 5-8. Because Plaintiff has no injury, she is in the classic position of a litigant without Article III standing who is seeking judicial enforcement of a statute despite the absence of an injury to vindicate.  The Court should reject her attempts to skirt the requirements of Article III.

"[T]he requirement of injury in fact is the hard floor of Article III jurisdiction that *cannot be removed by statute*." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009) (emphasis added). The "actual injury" component of standing is a vital component of the separation of powers doctrine. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 559-60, 576-77 (1992). The role of courts is to "redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers*, 129 S. Ct. at 1148. As such, the judicial power can only be invoked by a party who can show that he has been injured "in a concrete and personal way," ensuring that legal questions are answered not in the abstract but "in a concrete factual context conducive to the realistic appreciation of the consequences of judicial action." *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring).

Whether Plaintiff has standing based on purely statutory injury claims – *i.e.*, claims in response to an alleged statutory violation without any corresponding personal injury – is an unsettled question in the Third Circuit, and one that this Court should answer in the negative. In at least one instance the Third Circuit has sanctioned the type of claim that Plaintiff now brings. *See Alston v. Countrywide Financial Corp.*, 585 F.3d 753 (3d Cir. 2009) (finding that a statutory cause of action without a showing of actual loss was sufficient to confer constitutional standing).

*Alston* notwithstanding, the Third Circuit has also repeatedly rejected the notion that a mere statutory violation is sufficient to confer standing. For example, in *Fair Housing Council of Suburban Philadelphia v. Main Line Times*, 141 F.3d 439, 443-44 (3d Cir. 1998), the court considered standing under the Fair Housing Act. The plaintiff argued that "because it [held] the status of a private attorney general, it need show nothing more than a violation of [a statute] in order to establish Article III standing." *Id.* at 443 (second alteration in original). The Court of Appeals "disagree[d]," explaining that "a violation of the Act does not automatically confer

standing on any plaintiff." *Id.* at 443-44.  Rather, the plaintiff must "demonstrat[e] [a] legally cognizable *injury*." *Id.* at 444 (emphasis added); *see also Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998) (holding, in similar circumstances, that the plaintiff lacked standing because it failed to show that it "suffer[ed] actual injury as a result of the defendant's conduct").

Other Third Circuit decisions have come to the same conclusion.  *See, e.g.*, *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 176 (3d Cir. 2001) (holding that plaintiffs lacked standing for violations of the Lanham Act where they had no allegations that the defendants' actions had "harmed" them and they thus lacked the required "injury in fact"); *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, ***not on whether a statute was violated***.") (emphasis added).

Third Circuit district courts have also held that purely statutory claims are insufficient to confer standing.  The district court's decision in *Long v. Tommy Hilfiger U.S.A., Inc.*, No. 09-1701, 2011 WL 635271, at *1 (W.D. Pa. Feb. 11, 2011), *aff'd on other grounds*, 671 F.3d 371 (3d Cir. 2012) is instructive.  As noted above, the district court in *Long* dismissed an FCRA complaint on the basis of willfulness, which the Third Circuit affirmed.  Like Plaintiff here, the plaintiff in *Long* had no actual damages but sought relief under the FCRA's provision for statutory recovery.  *See id.* at *7.  The district court rejected that position, finding that the plaintiff "lack[ed] standing to sue on his behalf or on behalf of any putative class members because the complaint does not allege that he suffered an injury in fact." *Id.*

Here, the Court should grant GIS summary judgment because Plaintiff lacks sufficient injury to confer Article III standing.  As a result of GIS's alleged actions, Plaintiff is *no worse off*

*than she otherwise would have been*, yet she asks this Court to subject GIS to potentially tens of

millions of dollars of liability.  She has no injury that demands judicial redress and she has no

basis to pursue litigation.[13]  Plaintiff has no greater interest in this case than the general public's

interest "in seeing that the law is obeyed," which the Supreme Court has repeatedly held is

insufficient for a private litigant to invoke the judicial power.  *E.g.*, *Fed. Election Comm'n v.

Akins*, 524 U.S. 11, 24 (1998); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107

(1998).  Put simply, the mere fact that Plaintiff claims a statutory violation, without any

corresponding injury, is not sufficient to find that she has standing under Article III.  *See Raines

v. Byrd*, 521 U.S. 811, 820 n.3 (1996) ("It is settled that Congress cannot erase Article III's

standing requirements by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing.").  As such, the Court should grant summary judgment for GIS on all of

Plaintiff's claims.

**V.      The Court Should Grant GIS Summary Judgment Because Section 1681c is an
          Unconstitutional Restriction on Free Speech.**

Although GIS respects the Court's order denying GIS's motion for judgment on the

pleadings (Dkt. No. 63), GIS respectfully disagrees and believes that § 1681c violates the First

Amendment.  GIS hereby reincorporates its legal arguments in its motion for judgment on the

pleadings (Dkt. No. 40) as applied to the uncontroverted facts and preserves this issue for appeal.

**VI.     The Court Should Grant GIS Summary Judgment on Plaintiff's Section 1681k
          Claim Because the Report was Complete and Up-to-Date.**

Plaintiff's Complaint also attempts to set forth a claim under FCRA § 1681k, which

requires a CRA to either (1) notify the consumer that it is reporting public records to the

---

[13] An interest, such as a bounty of award of attorneys' fees, "that is merely a 'byproduct' of the
suit itself cannot give rise to a cognizable injury in fact for Article III standing."  *Vt. Agency of
Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).

employer **or** (2) maintain strict procedures to ensure that the report is complete and up-to-date.
*See* Compl. ¶ 47; 15 U.S.C. § 1681k.  A CRA is required to *either* give notice or to maintain
strict procedures – not both.  As such, Plaintiff is required to prove that GIS *neither* gave notice
*nor* maintained strict procedures.

GIS is entitled to summary judgment on Plaintiff's § 1681k claim because Plaintiff
cannot show that the report was anything other than complete and up-to-date.  The core of her
complaint is that the report included *too much* information, not too little, so she alleges and has
no claim that the report was incomplete.[14]  Further, the report was up-to-date in the sense that
§ 1681k requires.  That section says that "items of public record relating to arrests, indictments,
convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the
current public record status of the item at the time of the report is reported."  15 U.S.C. §
1681k(a)(2).  As shown in Exhibit A to the Hanks Declaration, GIS reported exactly the
information available at the time of the report.  If a report is both complete and up to date, there
is no inquiry into the procedures underlying that report.  *See, e.g.*, *Obabueki v. Int'l Bus. Machs.
Corp.*, 145 F. Supp. 2d 371, 396 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003) ("[If] the
information provided [in a report] was complete and up to date . . . ***then an inquiry into an
agency's procedures [under 1681k] is unnecessary.***") (emphasis added); *Farmer*, 285 F.R.D. at
696-97.  Here, Plaintiff's report was complete and up to date, which is the end of the inquiry
under § 1681k.

---

[14] Plaintiff claims only that the report included information that was not up to date, not that the
information was incomplete or inaccurate.  Compl. ¶ 47(b).  In a further attempt to present her
report as faulty, Plaintiff makes three de minimis allegations concerning her report: (1) an
incorrect charge date, (2) an incorrect arrest date, and (3) an omission of Plaintiff's hair color.
*Id.*  None of these allegations are material to the cause of action that Plaintiff pled, which
concerns information on her report not being *up to date*.  *See* 15 U.S.C. § 1681k(a)(2).

Plaintiff's true complaint seems to be a conflation of the concepts of *obsolete* information under § 1681c and information that is not *up to date* under § 1681k. The two concepts are fundamentally different.  Section 1681k requires CRAs to ensure that information is up to date in the sense that it correctly reflects current state of the public record at the time of the report, as discussed in detail above.  Section 1681c, on the other hand, requires CRAs not to report that up-to-date information if it is adverse, more than seven years old, and not "records of convictions." Whether information is obsolete under § 1681c and whether that information is up to date under § 1681k are completely independent issues.  Here, Plaintiff's report was complete and up to date.  GIS is thus entitled to summary judgment on Plaintiff's § 1681k claim.

## CONCLUSION

For the reasons stated above, General Information Services, Inc. respectfully requests that the Court grant this Motion for Summary Judgment.

Respectfully submitted this 30th day of April, 2013.


                                                    /s/ Robert E. Campbell

Robert E. Campbell                    Cindy D. Hanson (admitted *pro hac vice*)
WHITE & WILLIAMS LLP        John P. Jett (admitted *pro hac vice*)
LibertyView, Suite 400              KILPATRICK TOWNSEND &
457 Haddonfield Rd.                       STOCKTON LLP
Cherry Hill, NJ 08002-2220      1100 Peachtree Street, Suite 2800
Telephone: (856) 317-3600      Atlanta, GA 30309
                                                 Telephone:    (404) 815-6500


*Counsel for Defendant General Information Services, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 30, 2013, I electronically filed the foregoing

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to all attorneys of record:


Noah Axler
DONOVAN SEARLES, LLC
1845 Walnut St.
Ste 1100
Philadelphia, PA 19103
215-732-6067
Fax: 215-732-8060
Email: naxler@donovansearles.com

James A. Francis
John Soumilas
Erin A. Novak
FRANCIS & MAILMAN, PC
Land Title Bldg 19th Floor
100 S. Broad St.
Philadelphia, PA 19110
215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com


Janet F. Ginzberg
Michael G. Hollander
COMMUNITY LEGAL SERVICES
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3794
Email: jginzberg@clsphila.org
Email: mhollander@clsphila.org

Tony West
Maame Ewusi-Mensah Frimpong
Michael S. Blume
Kenneth L. Jost
Gerald C. Kell
U.S. DEPARTMENT OF JUSTICE
P.O. Box 386
Washington, D.C. 20044
Email: gerald.kell@usdoj.gov



_____/s/ Robert E. Campbell_____
          Robert E. Campbell

          *Counsel for Defendant General Information Services, Inc.*


26