# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SHAMARA T. KING,<br>on behalf of herself and all others<br>similarly situated<br><br>  Plaintiff,<br><br>v.<br><br>GENERAL INFORMATION<br>SERVICES, INC.,<br><br>  Defendant. | Civil Action No. 10-6850<br><br>CLASS ACTION |

## MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
DAVID A. SEARLES
ERIN A. NOVAK
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN AXLER, LLC**
NOAH AXLER
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**COMMUNITY LEGAL SERVICES, INC.**
JANET F. GINZBERG
MICHAEL HOLLANDER
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3745

**Attorneys for Plaintiff and the Class**

Dated: June 21, 2013

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Defendant Misapprehends The Function Of Ascertainability In This Case ........... 1

        1. Class Members need not be identified prior to class certification ................... 1

        2. The proposed Class is objectively defined and ascertainable .......................... 2

    B. Plaintiff Is An Adequate Representative Of The Class ............................................ 7

        1. There is no impermissible claim-splitting .......................................................... 7

        2. Plaintiff is not subject to unique defenses .......................................................... 9

    C. Common Questions Predominate ............................................................................ 11

    D. A Class Action Is Superior To Other Methods Of Adjudication ........................... 13

III. CONCLUSION ............................................................................................................. 16

## I.  INTRODUCTION

Plaintiff Shamara T. King, by counsel, respectfully submits this memorandum in further support of her Motion for Class Certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, seeking certification of this action as a class action and Plaintiff as class representative, and in reply to the opposition to her Motion filed by Defendant General Information Services, Inc. (GIS).

Defendant concedes that Plaintiff has met the Rule 23(a) factors of numerosity, commonality, typicality and the adequacy of her counsel.  Def. Mem. at p. 5, n. 2, p. 10, n. 7.  Defendant confines its opposition instead to the "unenumerated requirement" of ascertainability, *id*. at p. 5, Ms. King's own alleged inadequacy, and the predominance and superiority elements of Rule 23(b)(3).  As discussed below, Defendant's arguments should be rejected and the Class proposed by Ms. King should be certified.

## II.  ARGUMENT

### A.  Defendant Misapprehends The Function Of Ascertainability In This Case

#### 1.  Class members need not be identified prior to class certification

Defendant GIS's argument on ascertainability proceeds from an incorrect premise, which is that absent class members' actual identities must be ascertained before a class can be certified.  Any time a class action is filed, the membership is generally not known.  Contrary to Defendant's view, "the identity of individual class members need not be ascertained before class certification."  MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.222 (2004) ("MANUAL").  *See also Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010) ("at the outset of the case many members may be unknown"); 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1760, at 736 (3d ed. 2005) ("the class does not have to be so ascertainable that every potential

member can be identified at the commencement of the action"). "It is enough that the class be ascertain **able**." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) (emphasis in original) (certifying national class of consumers and leaving ascertainability analysis for claims administration process in the event plaintiff prevailed at trial); *Johnson v. Midland Credit Management, Inc.*, 2012 WL 5996391, *11 (N.D. Ohio Nov. 29, 2012) ("on class certification, only the ***ability*** to identify class members is necessary; the actual names and addresses of class members are not necessary at this time") (emphasis in original).

As this Court well knows, the burden on a plaintiff under Rule 23(a) is to show that the proposed class is numerous, and there is no doubt in this case that the numerosity requirement is satisfied. Defendant's own records identify over 28,000 potential class members. This Court's decision whether to certify the proposed Class, therefore, can proceed at this time without the need to identify each and every member by name and address. If the Class is certified, or after trial, the focus will then be on identifying the members. As discussed below, that process can take place without the alarmist fears raised by Defendant of extensive individualized fact-finding or "mini-trials."

### 2.      The proposed Class is objectively defined and ascertainable

Ascertainability is based on objective criteria. *Marcus v. BMW of North America, LLC*, 687 F.R.D. 583, 593 (3d Cir. 2012). Although it is not the case here, a class action may be inappropriate if membership is only ascertainable through "extensive and individualized fact-finding or 'mini-trials.'" *Id*. While Defendant trumpets *Marcus* as grounds for denying certification, the comparison is not apt. The Third Circuit in *Marcus* considered a proposed class far different from what Ms. King proposes here.

In *Marcus*, the complaint alleged defects in run-flat tires on certain BMW models. The district court had certified a class simply by cross-referencing the docket entry for the plaintiff's motion for class certification, which sought certification of a "New Jersey state subclass consisting of [any] and [a]ll current and former owners and lessees of 2006, 2007, 2008, and 2009 BMW vehicles equipped with run-flat tires manufactured by Bridgestone and/or BATO and sold or leased in [New Jersey] whose Tires have gone flat and been replaced." *Marcus*, 687 F.3d at 592. The appellate court pointed out ascertainability issues in that definition resulting from several areas of confusion: whether the class included owners and lessees of new or used BMWs from New Jersey BMW dealerships; whether it included subsequent owners or lessees of BMWs from non-BMW dealers; and, whether it included subsequent owners and lessees of used BMWs anywhere in the country from anyone whose BMW was initially bought or leased in New Jersey. *Id*.

Here, by contrast, Ms. King has set forth objective criteria for membership in her proposed Class, which is defined as follows:

> All natural persons residing within the United States and its Territories who, beginning two (2) years prior to the filing of the Complaint and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included any non-conviction criminal record which antedated the report by more than seven (7) years and which Defendant sold to an employer in connection with the person's job application for a position paying an annual salary of less than $75,000.

There is no confusion as to the geographical location of the membership (nationwide); the time frame (November 23, 2008 through the conclusion of this action); and, the identity of the class members (those persons (a) who were subject to a GIS employment report that (b) included any non-conviction criminal record that antedated the report by more than 7 years and (c) which was sold in connection with an application for a job paying an annual salary of less than $75,000).

3

The proposed Class is objectively defined and ascertainable. "An identifiable class exists if its members can be ascertained by reference to objective criteria." MANUAL, § 21.222 (2004). It is not necessary that every class member be identified as long as there is a method by which membership may be ascertained. *Brooks v. GAF Materials Corp.,* 2012 WL 5195982, *3 (D.S.C. Oct. 19, 2012) (certifying class of owners of South Carolina property with certain shingles manufactured at Alabama manufacturing facility between 1999 and 2007 "which have cracked, split, or torn.").

A class may be appropriately certified where the court can define the class in a manner that is reasonably "likely to apprise interested parties" of the existence of the class. NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002). "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." *Id.*

Defendant protests that, because it ostensibly does not keep track of salary data, it cannot determine which reports it prepared were for positions paying less than $75,000 annually. Def. Mem. at 6.[1] But even if such a self-serving representation is true, that would not prevent class certification at this juncture or class membership from ultimately being ascertainable. A defendant's attempt to confuse the class certification process with the claims administration process should not convince a court that a class is not ascertainable.

Defendant does not, and cannot, dispute that it can identify the 28,330 job applicants about whom it sold a background report with obsolete non-conviction records, and offers no reason that it cannot provide those identities for purposes of sending notice.[2] Instead, Defendant

---

[1] That is a dubious assertion, as it begs the question how Defendant can comply with section 1681c(b)(3), which limits the reports it can sell based on that very salary threshold. *Serrano v Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008).

[2] Resistance to identifying the class membership would be futile in any event in this Circuit. *Larson v. AT&T Mobility LLC,* 687 F.3d 109, 129-31 (3d Cir. 2012) (remanding to district court but

4

takes issue with Plaintiff's suggestion that the Class members can simply affirm that they applied for a position paying less than $75,000 annually.  Def. Mem. at 6.

While *Marcus* cautions against approving class members' inclusion in a case based solely on their "say so," 687 F.3d at 594, that is not what Plaintiff proposes here.  Following class certification or trial, notice would be sent to the Class and members would be required to certify that the job they applied for paid a salary less than $75,000.  To the extent necessary, verification can be obtained in a number of ways.  The Bureau of Labor Statistics (discussed at p. 13-14 of Plaintiff's Memorandum of Law in Support of Motion for Class Certification) is a reliable source of information concerning salary levels for many jobs.

Furthermore, it should be noted that the parties have not yet proceeded to the merits phase of discovery.  Under the Court's scheduling order of February 20, 2013, Doc. 75 at ¶ 4, that phase is scheduled to take place following a decision on class certification.  Consequently, Plaintiff will then have the opportunity to pursue discovery concerning the annual salaries for the jobs for which Class members applied from the employer customers to whom GIS sold reports.

In addition, if necessary, a claims administrator, without undue effort, could be used to determine the salaries of the jobs applied for by Class members.   Any concerns about Defendant's due process rights would further be met by Defendant's ability to verify the Class members' affirmations by checking salary levels with the employer to whom it sold the reports about Class members – employers who are Defendant's own customers and who should have had salary information available for Defendant upon the initial procurement of the reports.

---

indicating not unreasonable if defendant required to conduct database search to identify between 2.25 and 4.2 million class members by names and addresses).

*Harris v. comScore, Inc.*, 2013 WL 1339262 (N.D. Ill. April 2, 2013), is a post-*Marcus* decision that used this very procedure. In *Harris*, the court endorsed an affidavit or claim form procedure where the defendant alleged it did not to have the identities of all class members. The court relied on several other decisions allowing members of a class to establish class membership by affidavit or claim form. *See Boundas,* 280 F.R.D. at 417 ("[A]nybody claiming class membership on that basis will be required to submit an appropriate affidavit, which can be evaluated during the claims administration process if Boundas prevails at trial."); *see also Carrera v. Bayer Corp.,* 2011 WL 5878376, *4 (D.N.J. Nov. 22, 2011). As the leading class action treatise explains: "Methods of claim verification may also vary with the ease of documenting claims by individual members, and also with the size of the claims involved. A simple statement or affidavit may be sufficient where claims are small or are not amenable to ready verification." NEWBERG ON CLASS ACTIONS § 10:12 (4th ed. rev. 2012). *See also Brooks*, 2012 WL 5195982 at *4 (to the extent that a factual inquiry based on objective criteria is necessary, that can be handled through the claims administration process and would not require "mini-trials" that would inhibit class treatment).

Thus, when a class is certified or following trial, notice will be sent to the 28,330 individuals that Defendant has identified. In addition to the usual information explaining the case, defining the class and describing members' rights, the notice can contain a section to be completed certifying that the job applied for paid a salary of less than $75,000. This procedure is not in the realm of exhaustive fact-finding or one that naturally leads to contested hearings or other judicial involvement. Defendant's due process rights would not be threatened here because it would be able easily to verify any class member's affirmation by checking with its employer

customers. And, as noted above, merits discovery in the next phase will also flesh out the salaries for the jobs for which Class members applied.

Ascertainability of the Class membership does not prevent class certification.

**B.  Plaintiff Is An Adequate Representative Of The Class**

**1.  There is no impermissible claim-splitting**

Defendant challenges Ms. King's adequacy as a class representative on the purported ground that she has impermissibly "split her claims." Def. Mem. at 10-16. The FCRA permits a plaintiff to elect to pursue either statutory damages or actual damages. *See* 15 U.S.C. § 1681n. Defendant argues that Plaintiff's election of statutory damages is improper and makes her inadequate as a class representative. But as discussed in Plaintiff's Motion for Class Certification, many courts have certified FCRA classes for statutory claims only. Pltf. Mem. at 2-3.

And this is not at all unusual. Class action jurisprudence has recognized the appropriateness of such claims:

> Generally, the request for certification as a class action and the order approving such certification will determine the nature of the claims subject to class treatment, and the resultant judgment will be limited to those claims…. Thus, a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain form of relief are available. This type of action, of course, is one of the ***recognized exceptions to the rule against claim-splitting***.

18 MOORE'S FEDERAL PRACTICE ¶ 131.40(3)(iii) (2002), citing RESTATEMENT (SECOND OF JUDGMENTS § 26(1)(c) (1982) (emphasis added).

Defendant's argument against statutory damages classes effectively would likely lead to no class actions whatsoever under the FCRA. As pointed out by Chief Judge Easterbrook of the Seventh Circuit Court of Appeals, "[u]nless a district court finds that personal injuries are large

in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Murray v. GMAC Mortgage Corporation,* 434 F.3d 948, 953 (7th Cir. 2006) (remanding after district court denied certification of a class of consumers who received an allegedly deficient notice under the FCRA). This is because to deny class certification on the basis that the plaintiff "should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy," would make consumer class actions under the FCRA effectively "impossible." *Id.* at 952.

Furthermore, Defendant minimizes the role of Rule 23(c)(2)(B)(v). Given the availability of the opt-out mechanism, this Circuit has rejected the notion that limiting claims to statutory damages renders class certification inappropriate. *See Morgan v. Gay*, 471 F.3d 469, 476 n. 7 (3d Cir. 2006) (noting that the defendants' assertion that limiting damages to the purchase price of the defective item did not undermine class certification: "The availability of opting out by unnamed class members assuages any concerns that [the named plaintiff's] damage limitation harms these other class members"); *see also In re Community Bank of Northern Virginia*, 418 F.3d 277, 309 (3d Cir. 2005) ("The presence of certain class members with significant individual ... claims may counsel against a finding of superiority, but those individuals can opt-out and pursue their claims individually."); *see also Murray*, 434 F.3d at 953 ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently.").

It is also worth noting that Defendant has come forward with absolutely no evidence of either the number of its imagined actual damages claims or whether such claims might be substantial. *See Beaulieu v. EQ Indus. Services, Inc*., 2009 WL 2208131, *18 (E.D.N.C. July 22,

8

2009) (certifying class where discovery revealed few, if any, class members likely to have or file personal injury claims).

The mere possibility that some members of the Class might have claims for actual damages is not a true conflict of interest between the representative and other Class members in this case. If there are such members, they may opt-out of the class litigation. Nor is it very likely that any significant portion of the Class would opt out here.[3]

Ms. King does not have an interest antagonistic to the interests of the Class and she satisfies the adequacy requirement of Rule 23(a)(4).

### 2. **Plaintiff is not subject to unique defenses**

Defendant claims that Plaintiff is also not an adequate class representative allegedly because it has unique defenses to Ms. King's claim: it purportedly did not report adverse information concerning her. Defendant is mistaken. The information it reported about Ms. King, the 10 dismissed criminal charges, is absolutely "adverse."

The FCRA expressly prohibits the reporting of "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven

---

[3] This Court may wish to note that there is neither a history of excessive opt-outs in FCRA statutory damages class actions, nor any evidence of such a prospect in this case. Defendant ironically argues in its Motion for Summary Judgment that Plaintiff was no damages at all (Doc. 82-1 at pp. 20-23), although here it argues that many Class members will have very significant actual damages. Both of Defendant's positions are extreme and incorrect. The inclusion of obsolete non-conviction criminal records on the background reports of Class members is harmful in and of itself. Defendant discloses adverse information to prospective employers and that can only be harmful and contrary to the interests of the Class members. But there is no evidence here from which to find that a substantial number of Class members also have actual damages. Some Class members could have lost jobs due to other factors in their background reports, or more substantial factors, or due to factors completely unrelated to their background reports. Some Class members may have lost jobs but found other comparable jobs very quickly, and thus mitigated any actual damages. Still other Class members could have even been offered employment even after GIS's misleading background reports. But all Class members here were negatively affected by Defendant's unlawful practice, which should be found to be unlawful. Class members should all be compensated with statutory damages, with any members who believe they were harmed significantly having the option to opt out.

years." 15 U.S.C. § 1681c(a)(5). So not only are "records of conviction of crimes" addressed in the statute, but also "other adverse items of information." *See Serrano,* 557 F. Supp. 2d at 690-93 (considering non-conviction arrest and indictment records as "adverse.").

Plaintiff has already addressed this issue in opposing Defendant's Motion for Summary Judgment, but it is also relevant here. While "adverse" information is not defined by the FCRA, the common definition of "adverse" is "antagonistic in design or effect" or "contrary to one's interests or welfare." The American Heritage Dictionary p. 82 (2d College Ed. 1982). The FCRA broadly defines the related concept of "adverse action" as "a denial of employment ***or any other decision for employment purposes that adversely affects*** any current or prospective employee" or as "an ***action taken or determination*** that is— (I) made in connection with an application that was made by, ***or a transaction that was initiated*** by, . . . . and [that is] (II) ***adverse to the interests of the consumer***." 15 U.S.C. § 1681a(k) (emphasis added).

The seven pages of Plaintiff's report describe in detail the theft and conspiracy-related offenses which never led to convictions. Clearly, that information is "antagonistic" or "contrary" to Plaintiff's interests. There is nothing favorable or even neutral about information concerning arrests and charges for alleged theft, or any other alleged crime for that matter. There is no basis for Defendant to argue that the non-conviction criminal record information it reported about Ms. King is not "adverse" information, and therefore Ms. King is not subject to any unique defense that would render her inadequate as a class representative.

Finally, all other Class members are subject to the same "defense," as Defendant sees it. Defendant believes that non-conviction records related to the same incident are not adverse so long as any charge stemming from that same incident led to a reportable conviction. But that would be the case not only with Plaintiff but also with every other Class member. Thus, the

defense that GIS postures is certainly not unique to Plaintiff.

**C.	Common Questions Predominate**

Next, Defendant argues that Plaintiff fails to satisfy the predominance requirement of Rule 23(b)(3). Again, Defendant is mistaken.

Defendant attempts to raise the $75,000 annual salary issue,[4] the issue of establishing a willful violation under the FCRA and the issue of what constitutes "adverse" information as barriers to establishing predominance of common questions. Def. Mem. at 18-20. Rule 23(b)(3)'s commonality-predominance test, however, is qualitative rather than quantitative. *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 429 (4th Cir. 2003). Thus, a court might deny class certification where individual damages issues are especially complex or burdensome, *see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007); but where, as here, the qualitatively overarching issue by far is the liability issue of the Defendant's willful noncompliance with the FCRA, and the Class members were exposed to the same risk of harm every time the Defendant violated the statute in the identical manner, individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3). *See Murray v. GMAC Mortg. Corp.*, 434 F.3d at 953 ("Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification"); *Smilow v.*

---

[4]	Plaintiff has explained above why the annual salary issue is not a problem in identifying the Class membership. To the extent it is an individualized issue, it does not predominate over the issues common to the Class. As long as "resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and [those] particular issues are more substantial than the issue subject only to individualized proof," the predominance standard is satisfied. *In re American Int'l Group, Inc. Sec. Lit.*, 689 F.3d 229, 240 (2d Cir. 2012).

*Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 40 (1st Cir. 2003) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."); *Gillespie v. Equifax Information Services, LLC*, 2008 WL 4614327, *7 (N.D. Ill. Oct. 15, 2008) ("the outcome of this suit, whatever it may be, will turn on common evidence regarding Equifax's standard file disclosure practice, the legality of that practice, and if illegal whether Equifax's adoption of that standard practice amounted to a willful violation of the FCRA as *Safeco* defines willfulness. It is hard to imagine a case in which the predominance of common over individual issues has been more clearly shown.").

On the issue of willful noncompliance, the case of *Soutter v. Equifax Information Services, LLC*, 498 Fed. Appx. 260 (4th Cir. 2012), relied upon by Defendant, is inapposite. Ms. Soutter had claimed that Equifax had inaccurately reported a judgment on her credit report. She asserted a violation of a distinctively different section of the FCRA, section 1681e(b), for the defendant's failure to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Fourth Circuit reversed the district court's finding that the typicality requirement under Rule 23(a)(3) was met because proving Ms. Soutter's section 1681e(b) claim at trial would not also prove the claims of the absent class members. 498 Fed. Appx. at 265. This was because Equifax's agent employed "at least three different means of collecting general district court records during the class period." *Id*. Further, Ms. Soutter's proof that Equifax acted willfully was based on the advance notice she herself had sent to Equifax, which would not advance the willfulness claim of the absent class members. *Id*.

Here, by contrast, Defendant has admitted that it has followed the same procedure of reporting obsolete non-conviction criminal record history as to the entire Class. Defendant cites to no difference in its conduct as to any Class member. Thus, as explained by Judge Brody in a recent FCRA class certification decision, the focus is on Defendant's state of mind in implementing its policies and procedures of reporting the prohibited information, not on any one customer's particular interaction with Defendant. *Chakejian v. Equifax Information Services LLC,* 256 F.R.D. 492, 500 (E.D. Pa. 2009), citing *Cushman v. Trans Union Corp.,* 115 F.3d 220, 227 (3d Cir. 1997). Other judges in this District have held similarly. *Crane v. Trans Union LLC,* 282 F.Supp.2d 311, 321 (E.D. Pa. 2003) (relying on evidence of defendant's reporting practices to determine whether that policy was adopted in knowing or reckless violation of the FCRA); *Sheffer v. Experian Info. Solutions, Inc.,* 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (looking at the policies of the defendant to determine whether alleged inaccuracies in plaintiff's credit report were the result of the defendant's conscious or reckless disregard). Whether Defendant's noncompliance was willful under Third Circuit authority is thus a common, predominating question of law.

Whether Defendant reported "adverse" information is also a common question. As discussed above, the meaning of "adverse" in the FCRA is a question that is common to all members of the Class, all of whom had obsolete non-conviction criminal record information reported about them. There are no individual issues with regard to that common practice of reporting admitted by Defendant.

**D.   <u>A Class Action Is Superior To Other Methods Of Adjudication</u>**

Finally, the superiority requirement under Rule 23(b)(3) must be looked at from multiple points of view: the judicial system, the potential class members, the present plaintiff, the

13

attorneys for the litigants, the public at large, the defendant, and the issues. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974). In determining whether a class action is the best available method of litigation, the district court must "balance, in terms of fairness and efficiency," the merits of a class action against the merits of "alternative methods of adjudication." *In re Community Bank of Northern Virginia*, 418 F.3d at 309, citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996).

In considering consumer class actions such as the one at bar, courts have almost uniformly held that class actions are superior. *Sapp v. Experian Information Solutions, Inc.*, 2013 WL 2130956, *2 (E.D. Pa. May 15, 2013) (finding superiority in FCRA class action because "management of separate and individual claims is far more efficient in consumer claim cases such as those asserted here") citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Summerfield v. Equifax Information Services LLC,* 264 F.R.D. 133, 143 (D.N.J. 2009); *Chakejian v. Equifax Information Services LLC,* 256 F.R.D. at 501. *See also In re Prudential Ins. Co. America Sales Practice Litigation*, 148 F.3d 283, 316 (3d Cir. 1998) (affirming district court's finding of superiority where "the court examined the relatively modest size of individuals claims and the sheer volume of those claims in the aggregate, and concluded a class action presented the 'only rational avenue of redress for many class members'") (citations omitted); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (class action the superior method of resolving statutory allegations of mortgage agreement violations because "[t]he alternative to pursuing a class action is a series of state court actions by a large number of scattered plaintiffs, an inefficient allocation of judicial and public resources").

This is a case where there are a large number of potential plaintiffs pursuing statutory claims with a relatively small amount of potential recovery. Rule 23(b)(3) is the best method of adjudication for situations in which the potential recovery is so small that litigation of a single claim is generally not worth the cost and effort of litigation. Without the class action suit, many putative class members would lack the incentive to bring individual suits against Defendant.

While Defendant wishes it were not so, the presence of a fee-shifting provision in the FCRA does not defeat class certification. Again, Judge Brody addressed this argument in *Chakejian*:

> Although the availability of attorney's fees to litigants is indicative that a class action is by no means the "only" feasible route for litigants, it remains the superior mechanism here, where there is an inverse relationship between the cost of an individual action relative to the potential recovery, and where meaningful enforcement of the statute through individual consumer litigation is unlikely. … Although it could have done so, Congress has not chosen to preclude class actions under the FCRA, and the availability of attorney's fees does not undermine the advantages of class certification in this case.

256 F.R.D. at 501-02.

The spectre of "disproportionate" or "annihilating" damages raised by GIS, Def. Mem. at 23-24, carries no weight. There is nothing in the FCRA that demonstrates Congressional intent for courts to consider proportionality of damages to a potential class award in deciding whether to certify a class. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (holding that allowing consideration of potential enormity of damages would undermine compensatory and deterrent purposes of statute). As the Seventh Circuit stated when addressing similar concerns, "it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. . . . . While the [FCRA] remains on the books, . . . it must be enforced rather than subverted. An award that would be constitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified." *Murray*, 434 F.3d at 953-

54; *Parker v. Time Warner Entertainment Co., L.P.,* 331 F.3d 13, 22 (2d Cir. 2003) ("[I]t may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.... At this point in this case, however, these concerns remain hypothetical.").

### III. CONCLUSION

For the foregoing reasons and for the reasons set forth in her Motion for Class Certification, Plaintiff respectfully requests that this Court certify this action as a class action on behalf of the proposed Class defined herein, certify Plaintiff Shamara King as a proper representative of the Class, and appoint her counsel listed below as Class counsel.

Respectfully submitted,[5]

Dated: June 21, 2013

**FRANCIS & MAILMAN, P.C.**

BY: */s/ David A. Searles*
JAMES A. FRANCIS
JOHN SOUMILAS
DAVID A. SEARLES
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN AXLER, LLC**
NOAH AXLER
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**COMMUNITY LEGAL SERVICES, INC.**
JANET F. GINZBERG
MICHAEL HOLLANDER
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3745

---

[5] Plaintiff recognizes that the Court's procedures generally limit reply briefs to seven pages. Plaintiff has moved for an Order granting her permission to file an overlength Reply Brief. Doc. 85.

## **CERTIFICATE OF SERVICE**

I do hereby certify that on the date below, I caused a true and correct copy of the foregoing to be served by ECF notification upon the following counsel of record:

Cindy D. Hanson, Esq.
John P. Jett, Esq.
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
chanson@kilpatricktownsend.com
jjett@kilpatricktownsend.com

Michael O. Kassak, Esq.
WHITE & WILLIAMS LLP
Liberty View, Suite 400
457 Haddonfield Road
Cherry Hill, NJ  08002
kassakm@whiteandwilliams.com

*Attorneys for Defendant*
*General Information Services, Inc.*


Date: June 21, 2013                                                                          *s/ David A. Searles*
                                                                                                     David A. Searles